UNITED STATES of America, Appellee,

v.

Russell Eugene SCHARF, Appellant.

UNITED STATES of America, Appellee,

v.

Lionel Gilbert COOLIDGE, Appellant.

Nos. 77–3080, 77–3148.

United States Court of Appeals,
Ninth Circuit.

Dec. 7, 1978.

As Amended March 29, 1979.

Rehearing Denied July 31, 1979.

.. Robert H. Whaley (argued), Spokane, Wash., for appellants.

Carroll D. Gray, Asst. U. S. Atty. (argued), Spokane, Wash., for appellee.

Before HUFSTEDLER, WRIGHT and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge:

On April 25, 1977 a robbery took place at a federally insured bank in Cheney, Washington. Appellants were convicted of crimes related to that incident after a jury trial. Coolidge was found guilty of violating 18 U.S.C. § 3 (1976), accessory after the fact to bank robbery. He contends that unconstitutionally obtained statements made by him were used against him at trial and that the evidence was insufficient to convict him as an accessory to the crime.

Scharf was found guilty of violating 18 U.S.C. § 371 (1976), conspiracy to commit bank robbery. His principal claim is that his conviction rested on evidence gathered during an unconstitutional search of his automobile.

On the morning of the robbery three men in an automobile stopped at the Farmers and Merchants Bank in Cheney. While one remained in the car, the two other men entered the bank and took $6,900 at gunpoint. The robbers put the money in briefcases and fled in the waiting car. A Cheney police officer was near the bank when the robbery was reported, and he followed the robbers' car out of town until it disappeared from his view.

After losing sight of the escape car, the officer saw fresh tire tracks leading to a heavily wooded glen. A state patrolman had arrived to assist him. A few minutes later two vehicles (neither resembling the escape car) came out of the glen. One, a white and green four-wheel drive vehicle, turned and drove away from the officers. The officers stopped the second car, which was driven by the appellant Coolidge. The officers ordered Coolidge to lie on the ground and searched him for weapons.[1] In response to their questions, Coolidge explained that he had been in the glen looking for land to purchase and that he had been assaulted there by an unknown person. No *Miranda* warnings were given before these statements. The escape car was later discovered abandoned in the glen.

At the officers' request, Coolidge agreed to follow them to the bank in his own car. There he gave both oral and written statements, essentially repeating his earlier explanations for his presence in the glen and of the alleged assault. No *Miranda* warnings were given prior to the oral statement at the bank. The officer who took the written statement testified at a suppression hearing that he had not given *Miranda* warnings but at trial he claimed that he had done so.

---

1. While it is not entirely clear, it appears from the record that at least two other law enforcement officers arrived while Coolidge was being searched.

Coolidge was allowed to leave the bank. When he arrived home, he found his house surrounded by four police cars and eight police officers, some of whom were holding weapons. Not surprisingly, Coolidge agreed to get in a police car and to talk with F.B.I. agent Dieckman. During this questioning Coolidge changed his story and claimed he had been in the glen to purchase marijuana. No *Miranda* warnings were given.

Agent Dieckman came alone to Coolidge's home the following night and challenged Coolidge's story. Coolidge changed his story once again, stating he had gone to the glen to sell marijuana. No *Miranda* warnings were given.

Coolidge argues first that all of his statements resulted from questioning conducted in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), so that they were inadmissible at trial. We need discuss only the last two statements given to agent Dieckman, one during the forty-five minute interrogation in the police car and the other the next day in Coolidge's living room. The Government introduced these statements to show their inconsistency with Coolidge's prior admissions and to show his intent to hinder the investigation.

■ Whether the environment of the questioning is custodial so that a *Miranda* warning is required is governed by an objective standard. We must determine whether the "questioning [was] initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612; *Lowe v. United States*, 407 F.2d 1391, 1396 (9th Cir. 1969). Under this test we think that Dieckman's questioning of Coolidge in the police car was custodial. Coolidge had spent considerable time responding to police questions at the bank earlier that day. When he arrived at the front of his home that evening, Coolidge was surrounded by the officers, who remained on the scene while Dieckman questioned him in the police car. We think the suspect in the circumstances faced significant restraints and

that he was not free to leave. His statements were the product of police interrogation conducted without the *Miranda* warnings required by his custodial status, and they must be suppressed.

■ We rule that the statements given to Dieckman during the interview in Coolidge's living room the next evening were also made under custodial conditions and accordingly must be suppressed for failure to comply with the *Miranda* rule. A police car was parked across from Coolidge's house at all times during the interview, and he had noticed police officers watching him while he was at a local tavern a few hours before Dieckman conferred with him at home. The intensity of the surveillance, the repeated interrogations, and the fact that Coolidge had been subject to custodial interrogation twenty-four hours before are factors that combine to render the last interrogation a custodial one. The statements taken by Dieckman were of sufficient importance to the case so that their erroneous admission was not harmless, and Coolidge's conviction must therefore be reversed.

Appellant has made the further contention that the evidence was insufficient to support the conviction. We think the district court should have the benefit of our ruling on this issue if the Government elects to retry the case upon the same circumstantial proof as was introduced at the first trial. We express no opinion on the question whether it would violate the double jeopardy clause for the Government to retry the case. That issue is left open for further resolution. *See Greene v. Massey*, 437 U.S. 19 n.9, 98 S.Ct. 2151, 57 L.Ed.2d 15. We consider the evidence without reference to the statements that must be suppressed. So considered, we find the evidence insufficient to sustain a conviction.

To prove this case under 18 U.S.C. § 3 the Government must establish, beyond a reasonable doubt, that (a) a bank robbery occurred, (b) Coolidge had knowledge of one of the robber's participation in the crime,

and (c) Coolidge acted to "assisted [the robber] in order to hinder or prevent his apprehension, trial or punishment . . .." *See United States v. Rux,* 412 F.2d 331, 333 (9th Cir. 1969); *United States v. Eaton,* 485 F.2d 102, 108 (10th Cir. 1973). It is conceded by the parties that the first element was proven. It is the quantity of proof for the other two elements that we find troublesome.

The only eyewitness testimony to put Coolidge at the scene of the robbery was a tentative identification by one bank teller. The witness had not recognized Coolidge during the three hours he was sitting in full view in the bank. She stated only that she noticed a resemblance between Coolidge and one of the robbers when she saw Coolidge drive away from the bank after the interview had ended.

The remainder of the evidence was circumstantial and, taken in a light most favorable to the Government, was as follows: Coolidge and Scharf were friends prior to the robbery; two weeks after the robbery Scharf was arrested in a green and white vehicle similar to the one that sped away from the glen; just before Scharf was arrested he was driving nearby Coolidge's house; Scharf had guns and cash in the vehicle; Coolidge was at the glen immediately after the robbery and the escape car was found there.

■ The present case is a close one, but we do not think the evidence offered can support a finding beyond a reasonable doubt that Coolidge knew of the robbery or rendered assistance to the principals. Absent the statements that must be suppressed, there was insufficient evidence to support a conviction of Coolidge as an accessory after the fact.

We turn now to Scharf's challenge of the search of his automobile. Three nights after the robbery the police saw a vehicle similar in appearance to the green and white four-wheel vehicle that had been at the glen near Coolidge's home. Two Cheney police officers, Stokoe and Lux, followed the vehicle and stopped it after the vehicle had illegally passed another car. Stokoe then frisked the driver, appellant Scharf, for weapons while Lux stood at the police car holding a shotgun. As three more officers arrived Stokoe looked in the vehicle and saw a partially hidden briefcase between the front seats. He opened the door and placed the briefcase on the passenger seat. Stokoe mentioned the briefcase to a supervising police officer and they decided to ask for permission to open it. In response to the officers' request Scharf agreed to let them open it, and they discovered three guns and an undetermined sum of money. Scharf was immediately arrested.

■ Scharf challenges the trial court's finding that he had voluntarily consented to a search of the briefcase, claiming his consent was given in a custodial environment. Viewing the facts in the light most favorable to the Government, *United States v. Glover,* 514 F.2d 390, 391 (9th Cir.), *cert. denied,* 423 U.S. 857, 96 S.Ct. 108, 46 L.Ed.2d 83 (1975), we cannot say that this finding was clearly erroneous. *See United States v. Thompson,* 558 F.2d 522, 525 (9th Cir. 1977), *cert. denied sub nom. Reeve v. United States,* 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); *United States v. Lemon,* 550 F.2d 467, 472 (9th Cir. 1977).

The conviction of Coolidge is REVERSED.

The conviction of Scharf is AFFIRMED.