**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Ned Emerson LEE, Defendant-Appellee.**

No. 82–1366.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1982.

Decided Dec. 17, 1982.

Arthur G. Garcia, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellant.

Pamela J. Franks, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellee.

Before CHOY, SNEED, and FARRIS, Circuit Judges.

PER CURIAM.

Appellee Ned Emerson Lee ("Lee") was indicted for the first degree murder of his wife in violation of 18 U.S.C. §§ 1153 and 1111. He filed a motion to suppress certain statements made to officers and various items of physical evidence, and the district court granted the motion in all respects. The government appeals the granting of the motion. We affirm in part and reverse in part.

I.

FACTS

On December 16, 1981 FBI Agent McIlwaine and BIA Agent Goldtooth arrived at Lee's house to investigate the murder of Lee's wife. Lee told the officers that his wife had been killed while he was away from home, but during the course of the police investigation certain facts were uncovered which conflicted with his story. The agents asked Lee if he would agree to be interviewed in the FBI car which was parked in front of the house. When he entered the vehicle with the two agents he was told he was free to leave the car or terminate the interview at any time, but at no time was he advised of his *Miranda* rights, even though McIlwaine admitted that at all times while on the road he carries with him a standard waiver of rights form. The interview lasted for at least an hour, and perhaps for as long as an hour and a half.

The first half hour of the interview consisted of Lee repeating his exculpatory story. The agents then confronted him with the known facts which conflicted with his story, and McIlwaine stated, "Ned, now's the time to tell us the truth." Lee then confessed to choking his wife. Lee then signed a standard waiver of rights form and consented to a search of his tool shed which revealed the lead pipe. Lee was not arrested.

The next day, December 17, Lee voluntarily appeared at the BIA office in Tuba

City. Agents McIlwaine and Goldtooth again furnished Lee with a standard waiver of rights form and read him his rights in Navajo and in English. Lee then repeated his confession and produced the shoes he was wearing at the time of the homicide.

## II.

## DISCUSSION

■ The district court's findings of fact at a suppression hearing are reviewable pursuant to the clearly erroneous standard. *United States v. Booth,* 669 F.2d 1231, 1235 (9th Cir.1981). In the present case it is arguable that the district court did not actually make any findings of fact, as the court granted the motion to suppress "[f]or the reasons stated and authorities cited in defendant's memoranda." When the district court does not enter findings of fact or conclusions of law, we will uphold the result if there is a reasonable view of the evidence to support it. *United States v. Williams,* 630 F.2d 1322 (9th Cir.1980). An independent review of the facts of this case establishes that there is a reasonable view of the evidence that will sustain the district court's ruling as to the suppression of the two confessions and the lead pipe. However, we reverse the suppression of the shoes.

A. *The December 26 confession was unlawfully obtained during a custodial interrogation conducted without the giving of Miranda rights and must be suppressed.*

■ The focus of our inquiry in this case is upon whether Lee was "in custody" while he was being interrogated in the FBI sedan. All admit he was not informed of his rights before he was questioned. The district court found that Lee was in custody and thus was unlawfully interrogated, and we agree.

Although Lee was not forced into the car, considering the totality of the circumstances a reasonable person could conclude that Lee reasonably might feel he was not free to decline the agent's request that he be interviewed. *See, e.g., United States v. Be-*

*kowies,* 432 F.2d 8 (9th Cir.1970). Lee was questioned in a closed FBI car with two officers for well over an hour while police investigators were in and around his house. *See United States v. Scharf,* 608 F.2d 323 (9th Cir.1979). The agents allowed him to repeat his exculpatory story, then for 15 minutes confronted him with evidence of his guilt, and told him it was time to tell the truth, but did not advise him of his rights. In such circumstances a reasonable innocent person could conclude that he was not free to leave. *Bekowies,* 432 F.2d at 12. We affirm the district court's suppression of the confession obtained as a result of this unlawful interrogation.

B. *The lead pipe was recovered as a result of the unlawful confession and must be suppressed.*

■ The government concedes that if the confession was obtained unlawfully the murder weapon should be suppressed as the fruit of the poisonous tree under the doctrine of *Wong Sun v. United States,* 371 U.S. 471, 485–6, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). Since the confession was unlawfully obtained, the lead pipe obtained as a result of such confession was correctly suppressed.

C. *The December 17 confession was not sufficiently attenuated from the illegal interrogation of the previous day and thus was correctly suppressed.*

■ The circumstances surrounding a prior illegal confession may in some cases carry over and taint a subsequent confession, thereby rendering it inadmissible, even if the accused has been advised of his *Miranda* rights prior to the second confession. *United States v. Toral,* 536 F.2d 893, 896 (9th Cir.1976). In order for this causal chain to be severed, the second confession must be sufficiently an act of free will to purge the primary taint. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Here, the second confession, a virtual repetition of the first, was obtained less than 24 hours after the first confession was elicited without *Miranda* warnings. While a different result might have been

reached, we can not say that it was clearly erroneous for the district court to conclude that no intervening event of significance occurred so as to purge the taint of the illegally obtained confession. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Johnson,* 626 F.2d 753 (9th Cir.1980). Thus the December 17 confession was correctly suppressed as the fruit of the poisonous tree. *Wong Sun,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

D. *The shoes should not have been suppressed because they were discovered through a source independent of the illegal police conduct, and/or would inevitably have been discovered despite the illegality.*

 In order for evidence to be suppressed as the fruit of the poisonous tree, the defendant must first establish a factual nexus between the illegal confession and the challenged evidence. *United States v. Allard,* 634 F.2d 1182, 1183 (9th Cir.1980). If the evidence is discovered through a source independent of the police misconduct or if it would have been discovered despite the illegality, the factual nexus cannot be established. *Id.* at 1185. Here, the officers discovered Lee's footprints near his truck before either of the interviews. Even had Lee never confessed, the logical course of the investigation would have led to the discovery of the shoes which made these footprints. Thus the factual nexus was not established and the shoes should not have been suppressed. In finding otherwise the district court was clearly erroneous. We reverse the district court's order granting the motion to suppress the shoes.

Affirmed in part, reversed in part.