UNITED STATES of America,
Plaintiff-Appellee,

v.

Floyd Wayne HUDGENS,
Defendant-Appellant.

No. 85–3172.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1986.

Decided Aug. 28, 1986.

As Amended on Denial of
Rehearing Sept. 23, 1986.

Lance A. Caldwell, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Stephen R. Sady, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Before ALARCON, REINHARDT, and THOMPSON, Circuit Judges.

ALARCON, Circuit Judge:

Floyd Wayne Hudgens appeals from the judgment entered following his entry of a guilty plea to bank robbery pursuant to 18 U.S.C. § 2113(a). Hudgens contends the

trial court erred in denying his motion to suppress the statements he made to FBI agents before being advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree and affirm.

## I. PERTINENT FACTS

On August 8, 1985, Hudgens telephoned the FBI and asked to speak to the agent in charge of the robbery of the Woodstock Branch of the Community First Federal Bank in Portland, Oregon. Hudgens' call was transferred to FBI Agent Stanley Renning. Hudgens sounded very upset. He told Renning that he had just attempted to kill his girlfriend.

Hudgens told Renning he was calling from a telephone booth near a 7–11 store. Renning agreed to meet Hudgens there.

The Community First Federal Bank had been robbed four times between April, 1985, and June 11, 1985. Rennings obtained surveillance photographs taken during the commission of three of these crimes. Renning asked FBI Agent Robert Mitchell to accompany him. Renning told Mitchell that Hudgens might merely be looking for a way to get arrested because he was emotionally upset. For that reason, Rennings told Mitchell he would obtain a full statement containing details that could be corroborated before he made any attempt to arrest Hudgens.

It took the agents a half hour to travel to the address given by Hudgens. Hudgens was waiting at the place he had described when the FBI agents arrived in a "police-looking type vehicle." Agent Mitchell asked the defendant if he was Floyd Hudgens. Hudgens identified himself. He then lifted his shirt so that the agents could see that he did not have a gun. The agents identified themselves. Hudgens was asked to get into the car. Hudgens told the agents he wanted to talk about the Community First Federal Bank. Agent Mitchell offered Hudgens a cup of coffee. Hudgens accepted. Agent Mitchell walked to the 7–11 store. Agent Renning drove the car to the 7–11 parking lot.

Hudgens stated he robbed the Community First Federal Bank. Because Agent Renning did not know which robbery Hudgens claimed he committed, the officer displayed bank surveillance photographs taken during three separate robberies. Hudgens identified himself as one of the persons depicted in the surveillance photographs taken during the May 28, 1985 robbery. At this time, Agent Mitchell returned with coffee. Agent Renning asked Hudgens specific questions concerning the commission of the robbery. The interview lasted approximately 45 minutes. At its conclusion, Hudgens read and signed a written statement prepared by Mitchell. The agents then drove Hudgens to a less conspicuous area where he was patted down for the first time, handcuffed, and placed under arrest. The agents had not advised Hudgens of his *Miranda* rights prior to his arrest.

## II. ANALYSIS

### A. The Trial Court's Findings

Hudgens argues that none of his statements were admissible at his trial because he was subjected to custodial interrogation by the FBI agents without first being admonished regarding his constitutional rights as required by *Miranda v. Arizona.* Hudgens moved to suppress his statements in the district court. The district court made the following findings in denying this motion:

One. Hudgens was not ordered to enter the vehicle. He did so voluntarily.

Two. Hudgens' statements were made voluntarily.

Three. The agents did not use intimidating or coercive language during the interview.

Four. Hudgens' testimony that he believed that he was not free to leave the vehicle during the interview was not credible.

The district court concluded that the *Miranda* requirements were inapplicable because Hudgens was not in custody during the interview in the agents' vehicle.

## B. The Standard of Review

We review a district court's findings of fact under the clearly erroneous standard. *United States v. Snowadzki*, 723 F.2d 1427, 1429 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984). A trial court's determination of custody is also examined for clear error. *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir.1985); *United States v. Gillyard*, 726 F.2d 1426, 1429 (9th Cir.1984). A determination of voluntariness requires *de novo* review. *Miller v. Fenton*, —— U.S. ——, 106 S.Ct. 445, 450–53, 88 L.Ed.2d 405 (1985).

## C. *Miranda* Applies to Custodial Interrogation

■ In *Miranda v. Arizona*, the Supreme Court held that a statement is inadmissible, in the absence of an admonition of the right to remain silent and the right to counsel, where the accused is questioned while in "custody or otherwise deprived of his freedom of action in a significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. When a claim is made that a person has been subjected to custodial interrogation, we are required to consider whether, under the totality of circumstances, "a reasonable person in such circumstances would conclude after brief questioning he or she would not be free to leave." *Booth*, 669 F.2d 1231, 1235.

In *Booth*, we determined that the following factors should be considered in reviewing an issue of custodial interrogation:

> One. The language used by the officers in summoning the person interviewed.
>
> Two. The physical characteristics of the place where the interrogation occurred.
>
> Three. The degree of pressure applied to detain the individual.
>
> Four. The duration of the detention.
>
> Five. The extent to which the person was confronted with evidence of his guilt.

*Id.*

■ The record supports the trial court's finding that Hudgens was not in custody and that his statements were volunteered. Hudgens initiated the interrogation leading to his inculpatory statements by calling the FBI to offer information regarding a bank robbery. He was not summoned by the FBI to make a statement. In *Miranda*, the Supreme Court observed that law enforcement officers were not required to admonish an individual of his Fifth and Sixth Amendment rights if "a person calls the police to offer a confession or any other statement he desires to make." *Miranda*, 394 U.S. at 478, 86 S.Ct. at 1630. The fact that Hudgens was questioned during the interview he initiated does not render his statements inadmissible. *See California v. Beheler*, 463 U.S. 1121, 1124–25, 103 S.Ct. 3517, 3519–20, 77 L.Ed.2d 1275 (1982) (per curiam) (questioning initiated by the police of a suspect who voluntarily accompanies law enforcement officers to the station house is not custodial). In *Beheler*, the Supreme Court held that in determining whether a police interview is custodial, the fact that the individual is in a "coercive environment" is not controlling. Every police interview has coercive aspects; instead, the "ultimate question is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* at 1124–25, 103 S.Ct. at 3519–20 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)).

Unlike the circumstances in *Beheler*, in the instant matter Hudgens was not a suspect prior to the time he initiated the conversation with the agents. Hudgens was not physically restrained. There was no evidence of intimidation or coercion. The interrogation was conducted in a subdued low-keyed manner. Hudgens was not patted down, handcuffed, or physically restrained until after he made his statement. *See United States v. Crisco*, 725 F.2d 1228, 1231 (9th Cir.1981) (the defendant was not in custody because there was no evidence of coercion or intimidation, either physical or psychological).

Hudgens was not told he was not free to leave. Hudgens testified he did not feel

coerced by the agents. In *United States v. Leyva,* 659 F.2d 118, 120–21 (9th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982), we upheld the district court's determination that the fact a person was sufficiently self-possessed to refuse to answer certain questions "tipped the scale in favor of voluntariness." *Id.* The fact that Hudgens refused to disclose the location of the guns or to identify any other person involved in the robbery demonstrates the absence of coercion.

The agents testified that, until the decision was made to arrest Hudgens, he was free to leave. *See Booth,* 669 F.2d at 1238–39 (evidence of a law enforcement officer's subjective intent concerning the defendant's custodial status is relevant but not conclusive). The fact that the interrogation lasted only 45 minutes also supports the district court's determination that the statement was not the product of *custodial* interrogation. *See Beheler,* 463 U.S. at 1122, 103 S.Ct. at 3518 (30 minute interview in the station house was not custodial). Hudgens' reliance on *United States v. Lee,* 699 F.2d 466, 467–68 (9th Cir.1982) is misplaced. In *Lee,* we held that the district court's determination that the defendant was in custody was not clearly erroneous where the facts showed that he was questioned by FBI agents in an official vehicle notwithstanding the fact that the defendant was not forced to enter the van. *Lee,* 699 F.2d at 468. In *Lee* the agents went to the defendant's home to investigate a murder. After he made an exculpatory statement, Lee was confronted with evidence of his guilt and told to tell the truth. *Id.*

In the matter before us, Hudgens initiated the interview with the FBI agents. He volunteered that he had information concerning the robberies before being shown the bank surveillance photographs. He was not asked any questions until he had identified himself as one of the persons wearing a ski mask. Prior to his volunteered confession, the agents had no idea which of three separate robberies he may have committed. Identification of the persons depicted in the photographs was not possible because the perpetrators were masked.

The Supreme Court has recognized that *any* interview of one suspected of a crime by an officer of the law enforcement system may have coercive aspects without rising to the level of custody. *California v. Beheler,* 463 U.S. at 1125, 103 S.Ct. at 3520 (citing *Oregon v. Mathiason,* 429 U.S. at 495, 97 S.Ct. at 713 (1977)). Furthermore, "even though one's freedom of action is inhibited to some degree during an investigatory detention, *Miranda* warnings need not be given prior to questioning." *United States v. Woods,* 720 F.2d 1022, 1029 (9th Cir.1983) (brief questioning of suspects in a cocktail lounge was not custodial under *Miranda* simply because they were under investigation for narcotics violations and not free to leave) (citing *United States v. Collom,* 614 F.2d 624, 628 (9th Cir.1979), *cert. denied,* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980)). The fact that Hudgens' voluntary statements were made in a police car does not render them inadmissible. *See Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (a volunteered statement was found admissible although made in a police car by a defendant under formal arrest).

We are satisfied from our review of the totality of the circumstances that Hudgens initiated his conversation with the FBI agents and that he was not subjected to custodial interrogation.

**D.  Voluntariness**

■ Hudgens' argument that his statements were not voluntarily made because of intoxication, emotional disturbance and focused interrogation is without merit. *See California v. Beheler,* 463 U.S. at 1124–25, 103 S.Ct. at 3519–20 (a defendant's statements may be voluntary even though he was interviewed after becoming intoxicated and while he was emotionally distraught). Hudgens told Agent Renning that he had taken no drugs for two or three days before the interview. In addition, although he claimed that he was upset initially, Hudgens regained sufficient emotional control to answer only those questions he wished to answer. Finally, the interview

was initiated by Hudgens. He confessed to the bank robbery before being asked any questions.

Thus, under the totality of the circumstances, we conclude that Hudgens' statements were made voluntarily.

### E. Probable Cause

Hudgens also argues that the FBI agents were required to arrest him as soon as they had probable cause to believe that he committed a crime. This argument is also meritless. Law enforcement agents are under no constitutional duty to call a halt to a criminal investigation the moment that they have minimum evidence to establish probable cause. *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966); *United States v. Woods*, 720 F.2d at 1030–31. Probable cause to arrest a person may fall short of the amount necessary to support a criminal conviction. *Id.* "There is no constitutional right to be arrested." *Hoffa*, 385 U.S. at 310, 87 S.Ct. at 417. The agents were not required to halt the interview and arrest Hudgens as soon as probable cause to arrest him for the bank robbery was established.

### III. CONCLUSION

The totality of the circumstances supports the district court's denial of Hudgens' motion to suppress his statements. We determine that the interrogation of Hudgens was initiated by him and was voluntary. Further, the trial court's determination that Hudgens was not in custody when he was questioned at a location he selected was not clearly erroneous.

The judgment is AFFIRMED.