## State v. Sublett
*[Cite as 8 AOA 468]*

*Case No. 1914*
*Medina County, (9th)*
*Decided November 7, 1990*

*Dean Holman, Prosecuting Attorney, 135 S. Jefferson St., Medina, Ohio 44256 for Plaintiff.*

*Roger Ingraham, 218 E. Washington St., Medina, Ohio 44256 for Defendant.*

REECE, P.J.

The sole issue in this appeal is whether defendant-appellee, Rome Sublett (Sublett), was in the custody of Medina County detectives at the time he made his confession. After determining that he was, the common pleas court excluded all references to the incriminating statements pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436. We disagree and reverse.

Facts

At the time pertinent to this appeal, Sublett was an eighteen year old high school drop-out. On March 18, 1990, he accompanied

his father, Everett Sublett (Everett) to the residence of Joseph and Irene Tona in Medina County. By means of a ruse, Everett entered the home of the elderly couple armed with a pistol and followed by his son. The scheme went awry when Mr. Tona appeared with a gun of his own. Shots were exchanged and Everett was hit twice.

The elder Sublett was later taken to Barberton Citizens Hospital for treatment. An investigation by Medina County Sheriff's detectives was quickly initiated and Rome Sublett was interviewed that evening at the hospital. He denied any wrongdoing. As the investigation continued, information was uncovered linking the Subletts to the burglary.

The detectives visited Rome Sublett at his girlfriend's home on March 23, 1990. They asked him if he would consent to another interview, to which he agreed. Upon the detectives suggestion, the taped discussion took place outside the house in an unmarked police car. For the next forty-five minutes, Sublett proceeded to repeat his exculpatory story from five nights earlier.

The detectives began a half-hour discussion with Sublett off the record. They informed him, accurately, that his girlfriend had implicated him in the crime. They also told him, untruthfully, that he had been identified by a witness at the scene. The detectives impressed upon him that if convicted of the crimes committed he would serve substantial jail time. Sublett thereupon confessed to perpetrating the burglary with his father. A third taped interview was immediately conducted in the car. sublett proceeded to repeat his confession.

Sublett was indicted for aggravated burglary, R.C. 2911.11, aggravated robbery, R.C. 2911.01, kidnapping, R.C. 2905.01, and obstructing justice, R.C. 2921.32. A motion was filed requesting suppression of his confession, which he maintained was procured in violation of his constitutional rights. After an evidentiary hearing and the submission of briefs, the trial court granted the motion in favor of Sublett. The state's appeal now follows.

### Assignment of Error

"The trial court erred in granting the motion to suppress statements which were made voluntarily in a non-custodial setting."

There is no disputing that Sublett was never advised of his right to counsel prior to any of the three interviews. Consequently, we must begin with *Miranda, supra,* at 444, and its familiar edict:

"*** the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. ***." (Footnote omitted.)

The critical question presented is whether the incriminating statements arose from a custodial interrogation. See *State v. Buchholz* (1984), 11 Ohio St. 3d 24, 26.

A precise definition of this term is not available, requiring instead an inquiry into "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty* (1984), 468 U.S. 420, 440-442; see, also, *State v. Warrell* (1987); 41 Ohio App. 3d 286; *State v. Heilman* (Jan. 17, 1990), Medina App. No. 1823, unreported, at 3-4. Although any examination by police will have coercive aspects to it, *Miranda* rights are not required for everyone who is questioned. *Oregon v. Mathiason* (1977), 429 U.S. 492, 495. A suspect is entitled to *Miranda* explanations only when there is a restraint on freedom of movement of the degree associated with a formal arrest. *California v. Beheler* (1983), 463 U.S. 1121, 1125. Both the subjective intent of the detectives as well as the subjective belief of the suspect are irrelevant in this analysis. *United States v. Bengivenga* (C.A. 5, 1988), 845 F. 2d 593, 597 (en banc).

A trial court's determinations of historical fact will not be reversed if supported by some reliable credible evidence. See *State v. Williams* (1986), 23 Ohio St. 3d 16, 19; *State v. Cross* (1971), 26 Ohio St. 2d 270, 274. However, the ultimate issue of whether there was a custodial interrogation is a mixed question of Law and fact entitled to plenary review. *United States v. Calisto* (C.A. 3, 1988), 838 F. 2d 711, 717-718; *United States v. Hocking* (C.A. 7, 1988), 860 F. 2d 769, 772. We have reviewed the trial court's determinations of historical fact and find nothing im-

proper. Whether those facts support a conclusion) that a custodial interrogation, took place is another matter.

In its conclusions of law, the trial court reasoned as followed:

"***

"It appears to this Court that this Defendant became the focus of the investigation as to the extent of his involvement in the robbery after the police obtained information which led them to believe that he had lied to them when they first interviewed him and denied any knowledge of the crime.

"***

"Under the totality of the circumstances, the Court finds that this was a custodial interrogation. Defendant was told some of his rights under Miranda but others were omitted - most notably his right to counsel.

"***

"Defendant accompanied two (2) officers to a vehicle where he was denied the right to leave to use the restroom. The area was not a police station, but a two-door vehicle. Defendant could not leave even if he wanted to, unless the officers let him out."

"*** "

There is no question that at the time of the last two interviews, the detectives had focused their investigation upon Sublett. Nevertheless, the United States Supreme Court has noted that this detail is not determinative. *Mathiason, supra,* at 495; see, also, *Davis v. Allsbrooks* (C.A. 4, 1985), 778 F. 2d 168, 171. Focus is only relevant to the extent that the officers' outward conduct would cause a reasonable person to believe he is in custody.

By all accounts, Sublett entered the unmarked vehicle voluntarily. Consequently, the trial court declared in the findings of fact that:

"***

"The Detectives requested that defendant sit in their vehicle and be asked some questions.

"Defendant consented to be interviewed in the vehicle.

"***."

However, the court was greatly concerned that the detectives' responses to Sublett's requests to go to the restroom created an atmosphere of confinement. Sublett testified that during the interim which took place off the record he was not permitted to use the restroom. Nevertheless, the following conversation took place moments later at the beginning of the third interview:

"***

"[Q] Ok Rome, first of all you're aware that you're not under arrest at this time?
"A. Yes.
"Q. And that at this point we're conducting an interview which is being done with your, consent?
"A. Yes.
"A. Alright. You understand that you are under no obligation to talk with us?
"A. Yes.
"Q. Alright. You're free to discontinue the interview or leave at any time.
"A. Yes.
"Q. You, understand that?
"A. Yes."

"***."

Sublett thereafter proceeded with his confession.

As he was filling in omitted details, his second request was made:

"***

"Q. Would you be willing to try to point out those areas to us?
"A. Yeah I could point, I could try and do my best to point them out. And is there any chance I could use the rest room?
"Q. How about if we finish the interview and then we can make arrangements for that. It shouldn't take too much longer. Ok. Did you and your dad have any conversation as you were fleeing that area?
"A. He just told me to drive. ***."

Sublett made no further demands or protests for the remainder of the interview. The session concluded as follows:

"***

"Q. Ok. Is there anything that you'd like to add to this statement?
"A. No. I don't know.
"Q. You sure?
"A. I don't know of anything else to say except I feel alot [sic] better now that I told the truth instead of being retarded and stupid.

"***

"Q. Have we made any threats or promises to secure this statement?
"A. What do you mean by secure?
"A. Well, to obtain it. To get you to give us a statement.
"A. No."

"***."

A determination of whether a situation was custodial requires a careful examination of all the circumstances of the particular case. See 1 LaFave & Israel, Criminal Procedure (1984) 493, Section 6.6(c). Given his subsequent statements, the refusal of Sublett's first request to use the restroom did not create an overall atmosphere of oppression. The second request came after the bulk of the confession and lacked any sense of inflexibility or urgency. The detective's response was reasonable and can hardly be characterized as a denial.

Other factors belie Sublett's claims. The police vehicle in which the second and third interviews took place was unmarked and did not contain a cage. He was neither handcuffed nor subjected to a pat-down. Prior to both sessions, the detectives explained that he was not under arrest and had no obligation to answer their questions. Although Sublett was seated in the back of an unmarked two-door police car, the interviews were conducted in a familiar neighborhood in a vehicle which was open to view. Sublett did not indicate that he was abused or manhandled in any way. The detectives were neither in uniform nor exposing weapons.

In light of these circumstances we do not agree that sublett's confession was obtained during a custodial interrogation. See *State v. Maurer* (1984), 15 Ohio St. 3d 239, 256-257; *State v. Gump* (Jan. 13, 1988), Wayne App. No. 2299, unreported, at 4. The mere fact that the detectives' investigation focused upon Sublett does not change this result. Accordingly, the assignment of error is sustained and the trial court is reversed.

QUILLIN, J., concurs.

CACIOPPO, J., dissents.

CACIOPPO, J., dissenting.

While the opinion of the majority, correctly estates the principles enunciated in *Miranda* and other cases, interpreting *Miranda,* its analysis is flawed, in its, failure to apply *Miranda* principles to the case at bar.

In *United States v. Lee* (1982), 699 F. 2d 466, Ninth Circuit Court of Appeals confronted a District Court's suppression of a confession arising from factual circumstances essentially identical to those in the case *sub judice.*

The Ninth Circuit, in reviewing *Miranda* and other decisions interpreting *Miranda,* held:

"Although Lee was not forced into the car, considering the totality of the circumstances a reasonable person could conclude that Lee reasonably might feel he was not free to decline the agent's request that he be interviewed. *See, e.g., United States v. Bekowies,* 432 F.2d 8 (9th Cir. 1970) Lee was questioned in a closed FBI car with two officers for well over an hour while police investigators were in and around his house. *See United States v. Scharf,* 608 F.2d 323 (9th Cir. 1979). The agents allowed him to repeat his exculpatory story, then for 15 minutes confronted him with evidence of his guilt, and told him it was time to tell the truth, but did not advise him of his rights. In such circumstances a reasonable innocent person could conclude that he was not free to leave. *Bekowies,* 432 F.2d at 12. We affirm the district court's suppression of the confession obtained as a result of this unlawful interrogation."

While the decision in *Lee* is by no means controlling in this district, its sound rationale and undeniable factual similarities warrant that Ninth circuit's perspective be adopted in this district and applied in the case *sub judice.*

The trial court is in the best position to judge these matters, and this court should not substitute its judgment four the trial court's. See *State v. Logan* (July 15, 1987), Summit App. Nos. 12904, 12926, 12927, unreported (Quillin, J. concurring). In the case at bar, it appears as though the appellate court is using what Irving Younger has termed "the guilty S.O.B. theory of admissability." See *State v. Miller* (Feb. 24, 1988), Medina App. No. 1632, unreported (Quillin, J., concurring). Therefore, I dissent.