**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

JOHN CORNELIO NORRIS,
            *Defendant-Appellant.*

No. 03-10437

D.C. No.
CR-01-00005-1-
DCB

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
February 7, 2005—San Francisco, California

Filed November 10, 2005

Before: J. Clifford Wallace, Johnnie B. Rawlinson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Rawlinson

**COUNSEL**

Fredric F. Kay, Federal Public Defender, and David Taylor Shannon, Assistant Public Defender, Tucson, Arizona, for defendant-appellant John Cornelio Norris.

Paul K. Charlton, United States Attorney, Christina M. Cabanillas, Deputy Appellate Chief, and Nathan D. Leonardo, Assistant United States Attorney, Tucson, Arizona, for plaintiff-appellee United States of America.

**OPINION**

RAWLINSON, Circuit Judge:

John Cornelio Norris was convicted of three counts of aggravated sexual abuse. We hold that there was insufficient evidence to corroborate Norris's confession as to count two and reverse his conviction on that count. We affirm Norris's conviction on the remaining counts.

**I**
*FACTS AND PROCEDURAL HISTORY*

Norris is a member of the Tohono O'Odham Indian Nation and resided on the San Xavier Indian Reservation during the time the events at issue occurred. He is also the victim's uncle. The victim, referred to as T.V.,[1] spent the Thanksgiving weekend of 2000 with Norris at Norris's home. T.V. was five years old at the time. This occurrence was not unusual, as T.V. spent time at her uncle's home on other occasions, including during the summer of 2000.

---

[1]Because of the victim's age, she is referred to as T.V. T.V.'s older sister, who was the victim of a prior sexual assault by Norris, is referred to as T.V.'s sister.

On the Monday following Thanksgiving, T.V.'s mother received a report from T.V.'s school that Norris may have sexually abused her daughter. T.V.'s mother took T.V. to the clinic where T.V. was examined by Dr. Jacqueline DaSilva-Stephen. During the examination, T.V. told Dr. DaSilva-Stephen that she hurt in the area of her perineum.[2] T.V. also told the doctor that "Johnny put his peter in there." Dr. DaSilva-Stephen examined T.V. and noticed that the perineum area was slightly red. Because Dr. DaSilva-Stephen is not an expert in child sexual abuse, she contacted Child Protective Services and the Tohono O'Odham Police Department.

Approximately one week later, FBI Special Agent Elizabeth Ann Mireles and Detective Charles Hangartner from the Tohono O'Odham Police Department (the officers) went to Norris's home to ask him about the allegations of sexual abuse. Norris informed the officers that he had no problem talking to them. Because it was a very cold day and Norris had no electricity, the officers suggested that it would be more comfortable if they continued the conversation at the police substation, located about two miles from Norris's home.

The officers made clear that Norris's cooperation was voluntary and they offered to give him a ride to the substation. The officers also informed Norris that they would transport him back home when the interview was completed. En route to the substation, Norris sat in the front passenger seat unrestrained. Upon arrival, the officers reiterated that Norris's cooperation was strictly voluntary and that whenever he wanted to terminate the interview, the officers would take him home. Norris knew that he was not under arrest and was told that he would not be placed under arrest while at the substation.

---

[2]The perineum is the area between one's legs.

Norris was interviewed in the living room area of the police substation, which was a trailer. Norris was not given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). However, at no time during the encounter was Norris restrained in any way. Neither of the officers was in uniform and neither displayed a firearm at any time.

Norris was calm and cooperative. He admitted having sexual contact with the victim on November 25, 2000. Norris stated that he put his penis between the little girl's legs, touching her vaginal area and rubbing back and forth. He went on to describe a similar incident of sexual contact with T.V. that occurred sometime during the summer of 2000. Norris stated that during the incident that occurred in the summer, he also used his hands to touch the victim's vaginal area. Additionally, Norris told the officers about a similar incident in 1994 involving T.V.'s sister. The interview was terminated after approximately forty-five minutes and the officers drove Norris home, as promised.

Norris was subsequently indicted for three counts of aggravated sexual abuse of a child, in violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(2)(A) and (D). Section 1153 subjects Indians who commit specified offenses against a fellow Indian in Indian country to prosecution. Section 2241(c) makes it a crime to knowingly engage in a sexual act with a child below the age of twelve within a territorial jurisdiction of the United States. Sections 2246(2)(A) and (D) define the term "sexual act" as contact between the penis and the vulva or the anus, or "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

Norris moved to suppress his statements on the basis that the statements were taken while he was in custody, without *Miranda* warnings being given. After a hearing, the magis-

trate judge issued a Report and Recommendation recommending that Norris's motion to suppress be denied. The district court adopted the Report and Recommendation.

The government moved, pursuant to Rule 414 of the Federal Rules of Evidence, for leave to introduce Norris's statements that he engaged in other acts of child molestation. The government sought to introduce evidence of several prior acts, but the court only allowed the introduction of evidence relating to Norris's sexual abuse of T.V.'s sister. Norris objected to introduction of this evidence on the basis that there was no independent evidence of the *corpus delicti* of this prior act, because the only evidence of its occurrence was Norris's confession. The district court ruled that the *corpus delicti* rule does not apply to the admission of evidence of prior bad acts.

At the close of the government's case, Norris moved for an acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Norris argued that there was insufficient independent evidence of the *corpus delicti* of the act charged in count three. Norris also argued that counts two and three of the indictment were based on the same act and therefore were not separate crimes. The district court denied Norris's motions, holding that there was sufficient evidence to support the allegations as to all three counts.

After a three-day trial, a jury convicted Norris on all counts. The court sentenced Norris to concurrent 180-month prison terms for each count, and imposed five years of supervised release for each count, all running concurrently. In calculating Norris's sentence, the district court included an enhancement based on the court's finding that T.V. was in Norris's care and supervisory control at the time the crimes were committed. As a special condition of his supervised release, Norris was ordered to reside in a community corrections center for up to eighteen months.

## II
### *DISCUSSION*

**A. Norris was not in custody when he confessed to the officers**

Norris asserts that his confession should have been suppressed because he was never given his *Miranda* rights, although he was in custody at the time of his statements to the officers. We "review de novo the denial of a motion to suppress" and "whether a defendant is constitutionally entitled to *Miranda* warnings." *United States v. Crawford*, 372 F.3d 1048, 1053 (9th Cir. 2004) (en banc) (citations omitted).

**[1]** "An officer's obligation to administer *Miranda* warnings attaches only where there has been such a restriction on a person's freedom as to render him in custody." *Id.* at 1059 (citation, alteration and internal quotation marks omitted). A person is in custody only where "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (citation and internal quotation marks omitted). We must "examine the totality of the circumstances from the perspective of a reasonable person in the suspect's position." *Id.* (citation omitted).

In *Crawford*, we held that the defendant was not in custody when he accompanied the officers to an FBI office, the officers told him that he was not under arrest and was free to leave, and the officers drove him home after the interview. *Id.* at 1051-52, 1060. Similarly, in *California v. Beheler*, 463 U.S. 1121 (1983) (per curiam), the United States Supreme Court held that *Miranda* warnings are not required when a suspect voluntarily comes to the police station, is not placed under arrest, and is allowed to leave unhindered after a brief interview. *Id.* at 1121-22.

**[2]** In this case, Norris voluntarily accompanied the officers to the substation. He was told that his cooperation was volun-

tary and that he was free to terminate the interview at any time. Norris was also told that he was not under arrest and he was never restrained in any way. Upon completion of the interview, Norris was taken home by the officers. Considering the totality of the circumstances from the perspective of a reasonable person in Norris's position, Norris was not in custody for purposes of *Miranda*.

Norris acknowledges that absent the threat of a polygraph, he was not in custody. However, relying on *United States v. Lee*, 699 F.2d 466 (9th Cir. 1982), he contends that the threat of a polygraph transformed his non-custodial interrogation into a custodial one. As a preliminary matter, we note that it is questionable whether such a threat was actually made. Both Agent Mireles and Detective Hangartner testified that no such threat was ever made and that no polygraph test was ever offered to Norris.[3] Even if it were, and considering the alleged threat in the context of the totality of the circumstances, Norris was not in custody.

This case differs significantly from *Lee*. In *Lee*, the defendant was questioned in a closed FBI car with two officers for well over an hour while other investigators were in and around his house. *See Lee*, 699 F.2d at 467-68. After the two officers allowed Lee to repeat his exculpatory tale, they confronted him at length with factual evidence contradicting his story, and told him that "now's the time to tell us the truth." *Id*. at 467.

Unlike the officers in *Lee*, Agent Mireles and Detective Hangartner did not attempt to challenge Norris's statements

---

[3]Norris testified that the threat of a polygraph was made. The magistrate judge found that both Agent Mireles and Norris "testified credibly and consistently, *except on one point* [the polygraph matter]." However, there was no definitive ruling that the alleged threat was or was not made. Instead, the magistrate judge held that even if the threat were made, Norris was still not in custody. Based on *Crawford* and *Beheler*, we agree.

with other "known facts" suggesting his guilt, *id.*; they merely asked Norris about the allegations. Norris responded by voluntarily confessing to his involvement in the November 25, 2000 incident that the officers were investigating, and proceeded to tell the officers about other incidents that occurred in the summer of 2000, about which Norris had not even been asked.

**[3]** As the magistrate judge noted, the asserted threat of a polygraph would be more relevant to whether Norris's confession was voluntary, rather than whether he was in custody. *See Oregon v. Mathiason*, 429 U.S. 492, 495-96 (1977) (per curiam) ("Whatever relevance [the officer's false statement about having discovered Mathiason's fingerprints at the scene] may have to other issues in the case, it has nothing to do with whether [he] was in custody for purposes of the Miranda rule.").**4** The district court properly denied Norris's motion to suppress.

## B. The evidence of prior child molestation was properly admitted under Rule 414(a) of the Federal Rules of Evidence

"Although we generally review evidentiary determinations involving an application of the Federal Rules of Evidence for abuse of discretion, we review de novo the district court's interpretation of those rules." *United States v. Sioux*, 362 F.3d 1241, 1244 n.5 (9th Cir. 2004) (citations omitted).

**[4]** Rule 414(a) provides that "[i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414(a). Under Rule 414(a), the key to admissibility is relevance, and no independent evidence of the com-

---

**4**Norris does not challenge on appeal the voluntariness of his statements.

mission of the prior bad act is required. *See United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) (holding that the admission of propensity evidence under Rule 414 presents no constitutional violation when the evidence is relevant, probative, and not outweighed by its prejudicial effect); *see also United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001) ("A court considering the admissibility of Rule 414 evidence must first determine whether the evidence has probative value, recognizing 'the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible.' ") (citation omitted). Rather, *corpus delicti* evidence is required only when a confession is the sole basis for a conviction. *See United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000) (stating that "it has nevertheless been long established that, in order to serve *as the basis for conviction*, the government must also adduce some independent corroborating evidence.") (citation omitted) (emphasis added).

The Supreme Court's decision in *Huddleston v. United States*, 485 U.S. 681 (1988), which governs the admissibility of evidence under Rule 404(b), also controls the standard of proof required to admit evidence under Rules 413-415. In *Huddleston*, the Supreme Court held that the admissibility of other act evidence under Rule 404(b) is governed by Federal Rule of Evidence 104(b), the rule of conditional relevance. *Id.* at 689. When determining whether there is sufficient evidence to satisfy Rule 104(b), the court is not required to make any preliminary finding that the government has proved the conditional fact. *Id.* at 690. Instead, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.* Considering all the evidence, there was sufficient proof for a jury to reasonably find the conditional fact, that Norris committed the prior sexual act, by a preponderance of the evidence.

**[5]** The district court properly declined to apply a *corpus delicti* requirement to the admission of evidence under Rule

414. *See id.* (holding that the court is not required to make a finding that the government proved the conditional fact). The court also properly balanced the probative value of the prior act evidence against its prejudice as it is required to do. *See LeMay*, 260 F.3d at 1022 (holding that Rule 403 of the Federal Rules of Evidence applies to the admission of evidence under Rule 414). Therefore, the court acted within its discretion when it allowed the admission of Norris's prior act of sexually molesting a minor. *See Huddleston*, 485 U.S. at 684.

**C.   There was sufficient evidence to support Norris's conviction on count three, but not on count two**

Count two charged Norris with engaging in the sexual act of causing contact between his penis and T.V.'s vulva. Count three charged that Norris engaged in the sexual act of touching T.V.'s genitalia. Both acts were alleged to have occurred during the summer of 2000.

Norris argues that there is insufficient evidence to support a conviction for the acts of sexual abuse charged in counts two and three, and that his motion for acquittal should have been granted. Specifically, Norris contends that his confession was the only evidence that the charged acts actually occurred, and, therefore, the government was required to produce some independent corroborating evidence of the *corpus delicti* of those acts.

"We review a district court's denial of a motion for a judgment of acquittal de novo." *United States v. Lopez-Patino*, 391 F.3d 1034, 1036 (9th Cir. 2004) (citation omitted). "There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 1038 (citation omitted). Whether a defendant's confession has been sufficiently corroborated "is a mixed question of law and fact that is primarily factual," and review is for clear error.

*United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (citation omitted).

**[6]** In *United States v. Lopez-Alvarez*, 970 F.2d 583 (9th Cir. 1992), we created a two-part test to determine whether a confession has been corroborated sufficiently:

> [F]irst, although the state need not introduce independent evidence of the *corpus delicti* in conformance with the traditional test, it must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred. Second, it must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable.

*Id.* at 592.

It could be argued that we have retreated from the two-part test articulated in *Lopez-Alvarez. See, e.g.*, *Corona-Garcia*, 210 F.3d at 979 (declining to require "absolute proof" that the asserted conduct actually occurred). However, we do not read *Corona-Garcia* so narrowly. In that case, we referenced and followed the two-part test articulated in *Lopez-Alvarez*, holding that the evidence supplied by the government satisfied both elements. *Id.* at 978-79.

**[7]** Norris contends that counts two and three were based on the same events, and that the government failed to prove the *corpus delicti* of those counts that occurred in the summer of 2000. Norris posits that T.V.'s testimony that Norris "did sex to" her once, coupled with the evidence that T.V. had been abused on or around November 25, 2000 as charged in count one, precludes conviction on counts two and three, which alleged abuse in the summer of 2000. However, T.V. was a seven-year-old child who might have understood the term "sex" to mean only genitalia-to-genitalia contact. T.V.

also testified that Norris touched her vaginal area with his hand, and she never explicitly stated that all the acts described in her testimony occurred on one occasion. Thus, T.V.'s testimony was consistent with the theory that Norris touched her vulva with his penis in November 2000, and fondled her vulva with his hand at another time. T.V.'s testimony, combined with the evidence that T.V. had been at Norris's home in the summer of 2000, was sufficient to establish the trustworthiness of Norris's confession that he fondled her private area with his hand in the summer of 2000, as charged in count three. Her testimony also provided sufficient corroboration to establish that the core conduct of the offense charged—the intentional touching of T.V.'s genitalia—did in fact occur.

[8] Count two charged that Norris knowingly made contact between his penis and T.V.'s vulva in violation of 18 U.S.C. § 2246(2)(A). However, the government produced no evidence to corroborate Norris's confession that the core of the act, Norris's touching of T.V.'s vulva with his penis during the summer of 2000, actually occurred. On several occasions, when asked by the government how many times Norris touched her "private" with his "dick," T.V. responded "once."[5] The only other evidence presented by the government that the sexual act alleged in count two actually occurred was the statement by T.V.'s mother that T.V. stayed with Norris at times during the summer of 2000. This evidence does not sufficiently corroborate Norris's confession regarding the sexual misconduct. Accordingly, we reverse Norris's conviction on count two.[6]

---

[5]Count one of the indictment charged Norris with engaging in a sexual act, namely the contact between his penis and the vulva of T.V. Unless Norris touched T.V.'s vulva with his penis more than once, there is no other evidence that the sexual act charged in count two occurred.

[6]Because we hold that there is insufficient evidence to support a conviction on count two, Norris's multiplicity claim is moot.

# III
## *CONCLUSION*

**[9]** Norris was not in custody for *Miranda* purposes and his confession was properly admitted. The district court correctly allowed the government to introduce evidence of Norris's prior act of child molestation. There was sufficient corroborating evidence to admit Norris's confession as to count three. However, as there was insufficient corroborating evidence of the *corpus delicti* of the act charged in count two, we reverse Norris's conviction on that count and vacate his sentence. Because we have reversed one count of conviction, at a minimum Norris must be re-sentenced. *See, e.g.*, *United States v. Panaro*, 266 F.3d 939, 945 (9th Cir. 2001), *as amended* (remanding to the district court for re-sentencing after reversing defendant's conviction on one count of a multiple-count indictment). Because we are vacating Norris's sentence, we do not address his contention that the district court violated the Sixth Amendment by mandatorily enhancing his sentence based on its findings that T.V. was in Norris's care and supervisory control. That matter should be considered in the first instance by the district court.

**CONVICTION AFFIRMED** in part, **REVERSED** in part; **SENTENCE VACATED**; **CASE REMANDED**.