**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Elizabeth COPELAND, Defendant–**
**Appellant.**

No. 06–50598.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 18, 2007.

Filed Aug. 22, 2008.

Andrew G. Brown, Office of the U.S. Attorney, Los Angeles, CA, Michael J. Raphael, Esq., Assistant U.S., Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Carlton Frederick Gunn, FPDCA—Federal Public Defender's Office, Los Angeles, CA, for Defendant–Appellant.

Before: PREGERSON, HAWKINS, and FISHER, Circuit Judges.

## MEMORANDUM *

Appellant Elizabeth Copeland ("Copeland") appeals from her convictions for child battery, child battery resulting in coma, and three counts of lying to special agents. We affirm.

### I. Suppression Motions

■ The district court erred by denying Copeland's motion to suppress the statements made during an interview at Naval Criminal Investigative Service ("NCIS") headquarters. Although Copeland voluntarily came to the station and was initially told her cooperation was voluntary, she was separated from her companions, questioned for at least seven hours (significantly longer than any prior reported Ninth Circuit case), and confronted by agents with numerous inconsistencies in her story in an accusatory manner. The totality of the circumstances established a setting in which a reasonable person would believe she was not simply free to leave. *See United States v. Kim,* 292 F.3d 969, 973–78 (9th Cir.2002); *United States v. Lee,* 699 F.2d 466, 467–68 (9th Cir.1982) (per curiam). Because we conclude the interrogation was custodial, *Miranda* warnings should have been given, and the district court should have suppressed the statements taken in violation of *Miranda. Kim,* 292 F.3d at 978.

However, we conclude this error was harmless beyond a reasonable doubt because the district court properly denied Copeland's motion to suppress additional statements she made during an interview on November 3rd. This later interview occurred in her home, was less confrontational, and was of much shorter duration than the prior interview.[1] Copeland con-

cedes that the interview was initially voluntary and not custodial, but contends that it became custodial when she indicated she wasn't sure she wanted to talk to the agents at that time, but the agents ignored her. The transcript of the interview suggests Copeland was "thinking out loud" about her options rather than expressly stating she wanted the agents to leave, and rather than ignoring her, the agents responded with context-appropriate comments or questions. The totality of the circumstances did not create an atmosphere in which a reasonable person would have believed she could not terminate the interview. *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).

■ Thus, any error in admitting the September 23rd interview was harmless. With respect to the three false statement counts, the false statements she made during the September interview were themselves criminal and admissible at trial. *See United States v. Mitchell,* 812 F.2d 1250, 1253–55 (9th Cir.1987), overruled on other grounds by *Planned Parenthood of Columbia/Willamette, Inc., v. Am. Coalition of Life Activists,* 290 F.3d 1058, 1066–70 (9th Cir.2002) (en banc). Copeland then contradicted these statements during the November 3rd interview. There was also ample other evidence to support the child abuse counts, including the inculpatory statements Copeland made on November 3rd, as well as the medical evidence which contradicted her explanations for the victim's ("H.H.") injuries, and the statements made by Copeland and H.H.'s own father on the date of the injury, including a 911 call in which the father re-

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. We note that Copeland does not seek to exclude the November 3rd interview as a fruit-of-the-poisonous-tree, but argues it was independently custodial in nature.

layed (consistent with Copeland's November 3rd statement) that Copeland "gave [H.H.] a spanking and she fell off the chair."

## II. Evidentiary Issues

■ The district court did not abuse its discretion by precluding Copeland's psychologist from testifying about the childhood abuse she had suffered. The court permitted the expert to testify that Copeland had suffered traumatic events as a child sufficient to cause dissociative disorder, and also informed the jury they would not hear the specifics because the details were not relevant. The additional probative value of knowing the specific trauma was minimal and did not substantially outweigh the possible prejudice to the government of jury nullification based on sympathy. Fed.R.Evid. 703.

■ Although Dr. Pickert was entitled to rely on Dr. Corazza's opinion in forming an opinion regarding H.H.'s injuries, he should not have been allowed to testify regarding the substance of the report, which was inadmissible hearsay by a non-testifying expert, unless the court determined that the probative value substantially outweighed any prejudicial effect. *See Mike's Train House, Inc. v. Lionel,* 472 F.3d 398, 409 (6th Cir.2006); Fed.R.Evid. 703. Nonetheless, even assuming the testimony was erroneously admitted, Copeland cannot establish plain error. The reference to Dr. Corazza's report was extremely brief, the focus of Dr. Pickert's testimony was on his own observations of H.H.'s injuries, and another government witness testified to a similar diagnosis.

■ Nor was there an abuse of discretion in permitting the doctors to testify that H.H.'s injuries were non-accidental. This testimony was part of their medical diagnosis, based on their significant experience in dealing with child abuse and traumatic injuries. *Cf. United States v. Boise,* 916 F.2d 497, 502–03 & n. 14 (9th Cir.1990). Moreover, it did not invade the province of the jury; doctors may opine on an ultimate issue of fact so long as they do not opine as to the defendant's mental state. *United States v. Langford,* 802 F.2d 1176, 1179 (9th Cir.1986); Fed. R.Evid. 704.

■ Neither was there plain error in permitting the government to cross-examine Copeland's expert regarding his diagnoses of Copeland based on the results of the MMPI. Copeland put the results of the test and Dr. Fairbank's diagnosis at issue on direct examination, and thus opened the door to additional questions about the test results. *Cf. Pawlyk v. Wood,* 248 F.3d 815, 825 (9th Cir.2001). Even if permitting the questioning were error, the error was not obvious and did not affect Copeland's substantial rights, as the prosecution's focus was not on Copeland's personality but on her admissions and the failure of medical evidence to correspond to her explanation for H.H.'s injury.[2]

**AFFIRMED.**[3]

---

2. Because of our conclusion that only one of the evidentiary rulings was actually in error, there is no cumulative error to consider.

3. Judge Pregerson concurred only in the result.