**F I L E D**

**PUBLISH**

**AUG 21 2001**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHRISTI ALFRED,

      Plaintiff - Appellant,

v.

CATERPILLAR, INC., a foreign
corporation, doing business as CAT,
also known as CAT,

      Defendant - Appellee.

No. 00-6317

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CV-99-14-C)

Thomas J. Steece (Steven R. Jung and Mark A. Mathews with him on the brief),
Steece, Mathews & Associates, P.C., Oklahoma City, Oklahoma, for the Plaintiff-
Appellant.

James A. Jennings, III (W.T. Womble, Womble & Cotellesse, Houston, Texas,
with him on the brief), Jennings Cook & Hoisington, Oklahoma City, Oklahoma,
for the Defendant-Appellee.

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Plaintiff Christi Alfred was on active duty with the United States Navy when she was severely injured by a paver manufactured by defendant Caterpillar. In this product liability suit, she alleges the paver's design was defective and that the defect caused her injury. At the close of her case, the district court struck the testimony of plaintiff's expert witness and granted defendant's motion for judgment as a matter of law under Fed. R. Civ. P. 50(a). Plaintiff challenges both rulings. We again address the issue of timing of Daubert motions, and exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse in part and affirm in part the district court's decision to strike plaintiff's expert testimony on the merits and affirm the trial court's grant of judgment as a matter of law in defendant's favor.

**I**

Alfred was assigned to a construction battalion at the United States Naval Base in Rota, Spain. While giving hand signals to the operator of an asphalt paver, Alfred was ordered to stand between the paver and a tree. Nearing the tree, the operator stopped the paver on plaintiff's signal, but upon her subsequent order to reverse direction the operator mistakenly moved the paver forward, pinning her against the tree. His mistake appears to have consisted of failing to place the direction toggle switch into reverse mode before turning the rotary dial that controls the vehicle's speed. As a result of the accident, plaintiff's right leg was injured and later amputated below the knee.

Plaintiff alleges the paver's control mechanism is defective because it is counterintuitive; defendant responds that the accident was caused by human error and that the mechanism is not defective or unreasonably dangerous. At trial, plaintiff admitted that the operator made a mistake with the controls and that she should not have been standing between the paver and the tree.

To prove her case plaintiff relied on the testimony of her liability expert, William P. Munsell, that the paver contained a defect that made it unreasonably dangerous and caused plaintiff's injury—two of the elements of a manufacturer's product liability cause of action in Oklahoma. See Alexander v. Smith & Nephew, P.L.C., 98 F. Supp. 2d 1310, 1318 (N.D. Okla. 2000) (citing Kirkland v. Gen. Motors Corp., 521 P.2d 1353, 1363 (Okla. 1974)). Munsell, a mechanical engineer, testified that the use of a rotary variable speed control instead of a lever was "not intuitive" and was a direct cause of plaintiff's injury. (Appellee's App. at 40.) Plaintiff's only evidence regarding defendant's liability for product design was Munsell's testimony.

After plaintiff rested, defendant moved to strike Munsell's testimony on the ground that he was not qualified by knowledge, skill, training, or education to offer opinion testimony in the case and that he had done insufficient research to support his conclusion that the paver was defective in design. Defendant concurrently moved for judgment as a matter of law under Fed. R. Civ. P. 50(a).

The court granted the motion to strike and, concluding that without Munsell's opinion plaintiff's case was not supported by the evidence, proceeded to grant judgment as a matter of law for defendant. The court made the following observations:

> Mr. Munsell gave an opinion that was very limited and it was backed by very little work and very little expertise. I think Mr. Jennings has covered all that at the bench and it need not be repeated.
> The only actual investigation that he did was to find a machine that had the lever rather than the dial in order to satisfy himself that it was possible, and to identify for the benefit of the jury the guidelines and standards on which he based his conclusion.
> Aside from identifying those guidelines and standards, however, he has done no work that supports his conclusion that they are prohibited, that the design of this machine is defective, or that the guidelines and standard apply even to the mechanics of this machine.
> . . . .
> I find that his opinion is simply not competent under <u>Daubert</u> and other cases construing <u>Daubert</u>; that it is not supported by sufficient testing, experience, background, education, or thought to be relied upon by this jury. Without that opinion, I think it's quite clear that there is no evidence on which this case can go to the jury, and it is for those reasons and on that basis that I grant the defendant—first, the defendant's motion to strike the expert testimony and, secondly, its Rule 50 motion for judgment as a matter of law.

(Appellant's App. at 8–9.)

## II

Rule 702 of the Federal Rules of Evidence authorizes a "witness qualified as an expert by knowledge, skill, experience, training, or education" to give opinion testimony "[i]f scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a fact in issue."

Consistent with the Supreme Court's decision in <u>Daubert v. Merrell Dow</u>

<u>Pharmaceuticals, Inc.</u>, Rule 702 requires trial courts to act as gatekeepers,

admitting only expert testimony that is both reliable and relevant. 509 U.S. 579,

589 (1993). "This gatekeeper function requires the judge to assess the reasoning

and methodology underlying the expert's opinion, and determine whether it is

scientifically valid and applicable to a particular set of facts." <u>Goebel v. Denver</u>

<u>& Rio Grande W. R.R. Co.</u>, 215 F.3d 1083, 1087 (10th Cir. 2000) (citing <u>Daubert</u>,

509 U.S. at 592).

### A

We turn briefly to the timeliness of defendant's motion to strike expert

testimony after the close of plaintiff's case. In our recent decision of <u>Macsenti v.</u>

<u>Becker</u>, 237 F.3d 1223, 1230–34 (10th Cir. 2001), this Court affirmed a district

court's rejection of <u>Daubert</u> objections raised by a defendant at the close of all the

evidence. In doing so, we concluded "that Defendant forfeited the opportunity to

subject the expert testimony of [the] plaintiff's . . . experts to a <u>Daubert</u> challenge

by failure to make a timely objection before that testimony was admitted." <u>Id.</u> at

1231.

Recognizing that the law traditionally does not reward ambush trial tactics,

in <u>Macsenti</u> this Court correctly criticized the practice of filing <u>Daubert</u> motions

at a late stage in the adversarial process when there has been no motion in limine or concurrent objection to an expert's participation. Counsel should not "sandbag" Daubert concerns until the close of an opponent's case, thereby placing opposing counsel and the trial court at a severe disadvantage. See Macsenti, 237 F.3d at 1233–34. The truth-seeking function of litigation is best served by an orderly progression, and because Daubert generally contemplates a "gatekeeping" function, not a "gotcha" junction, Macsenti permits a district court to reject as untimely Daubert motions raised late in the trial process; only in rare circumstances will such tardy motions, albeit allowed under our decision in Goebel, be warranted. 215 F.3d at 1087 (indicating a district court can satisfy its Daubert gatekeeping role "when asked to rule on a motion in limine, on an objection during trial, or on a post-trial motion"). In this case, unlike in Macsenti, the district court chose to address the defendant's Daubert objections on the merits, rather than deeming them waived. Because of the split character of our disposition on the merits—affirming in part and reversing in part the decision to strike Munsell's testimony—we elect not to reach the issue of the motion's belated consideration, leaving for another day further development of Macsenti's timing jurisprudence.

**B**

Our review of a trial court's exercise of its <u>Daubert</u> gatekeeping function is for abuse of discretion. <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 139 (1997); <u>Goebel</u>, 215 F.3d at 1087; <u>Mitchell v. Gencorp, Inc.</u>, 165 F.3d 778, 780 (10th Cir. 1999). Under an abuse of discretion standard, a ruling will not be disturbed on appeal unless it is "arbitrary, capricious, whimsical or manifestly unreasonable" or when this Court is convinced that the trial court "has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." <u>Atlantic Richfield Co. v. Farm Credit Bank of Wichita</u>, 226 F.3d 1138, 1163 (10th Cir. 2000) (citations omitted).

Plaintiff argues Munsell's testimony qualified as admissible expert testimony under the requirements of Rule 702 and <u>Daubert</u> and therefore was erroneously stricken. Munsell's testimony was based on engineering standards promulgated by the Society of Automotive Engineers ("SAE") as well as on his investigative work. Citing SAE Standard J297, entitled "Operator Controls on Industrial Equipment," he opined that the variable speed control on a paver should be in the form of a lever rather than a rotary dial. Because the paver involved in the litigation was equipped with a rotary dial instead of a lever, he concluded, its design was defective for failing to meet the SAE standard.

Munsell testified that he had nine years of experience in failure analysis and evaluation of industrial accidents, including investigation and analysis of various control mechanisms, and that he has routinely researched and applied engineering standards promulgated by various organizations, including the SAE. He testified further regarding his methodology in this case, which included researching engineering standards applicable to pavers, in particular those governing speed control mechanisms, and applying those standards to knowledge gained during field research. Defendant did not dispute that the SAE standards upon which Munsell's opinion was based are well-accepted in the engineering community. Technical committees of the SAE draft and review engineering safety standards for mobility systems, including off-highway equipment. See Satcher v. Honda Motor Co., 52 F.3d 1311, 1316 (5th Cir. 1995). According to Munsell's testimony, several Caterpillar employees were members of committees responsible for promulgating the SAE standards.

Based on our review of the record, we are persuaded that Munsell's testimony that the speed control mechanism did not comply with SAE J297 was both reliable and relevant to the issue of defective design. See Daubert, 509 U.S. at 589. Munsell's testimony was reliable—meeting one of the Daubert criteria—because it was the result of his having researched and applied standards promulgated by an internationally recognized organization of engineers. The

testimony was relevant—meeting the other—because although it is not dispositive and might be countered by conflicting testimony, it could allow the jury to infer Caterpillar's paver was defective for failing to meet industry design standards. Because that portion of his opinion qualified as admissible expert testimony under Rule 702 and <u>Daubert</u>, we hold that striking Munsell's testimony as to the paver's failure to comply with SAE J297 was an abuse of the trial court's discretion.

Munsell admitted that the factual issues at trial also concerned "a field of expertise known as human factors." (Appellee's App. at 51.) Not only did Munsell acknowledge that there are specialists in human factors and that he is not one, but he also testified that his knowledge of that specialty was gained during a trip to the library the week prior to trial, <u>after</u> he had arrived at his opinion regarding the Caterpillar paver. Munsell conceded he had only looked at one paver during his preparation for the case, and that he had never seen a paver of the type involved in the accident or researched the control mechanisms of any types of pavers other than the one he saw. We found no indication in the record that Munsell had ever evaluated a paver prior to this litigation.

Those admissions demonstrate that Munsell's qualifications in the field of human factors were inadequate and that his field research and preparation for trial were cursory, undermining the reliability of his opinion that the Caterpillar paver's control mechanism is "not intuitive" to paver operators. (Appellee's App.

at 40.)  The only information Munsell was qualified to provide based on his experience and field research was that at least one manufacturer of pavers used levers instead of rotary dials for variable speed control.  (See Appellee's App. at 48 ("I just know that levers are feasible.").)  The trial court was well within its discretion in concluding, first, that the existence of one paver equipped with a lever instead of a rotary dial, standing alone, does not constitute relevant "specialized knowledge" that could help the jury to determine a fact in issue and, second, that Munsell was not "qualified as an expert" in the relevant field of human factors.  Fed. R. Evid. 702.  "The trial judge is granted great latitude in deciding which factors to use in evaluating the reliability of expert testimony . . . ."  United States v. Charley, 189 F.3d 1251, 1266 (10th Cir. 1999).  The trial judge's statement accompanying her ruling was sufficiently detailed to indicate she had conducted an adequate Daubert analysis.  Cf. Goebel, 215 F.3d at 1088 (holding a trial court's Daubert ruling inadequate where there was "not a single explicit statement on the record to indicate that the district court ever conducted any form of Daubert analysis whatsoever").

We reverse only the decision to strike that part of Munsell's testimony regarding compliance with SAE standards and affirm the balance of the Daubert ruling based on Munsell's lack of experience and training in human factors

engineering, expressing no opinion on the merits of those aspects of the testimony. That, however, does not end the matter.

Questions remain whether the grant of judgment as a matter of law in defendant's favor would have been permissible had Munsell's testimony regarding Caterpillar's noncompliance with SAE standards remained a part of the evidence and been properly credited in the JMOL analysis.

### III

We review de novo a grant of judgment as a matter of law. Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 796 (10th Cir. 2001). Rule 50 "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" Weisgram v. Marley Co., 528 U.S. 440, 448 (2000) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2521, at 240 (2d ed. 1995)). Munsell's testimony regarding the failure of the speed control mechanism to comply with SAE J297, standing alone, was insufficient to allow a reasonable finder of fact to conclude the paver was defective and unreasonably dangerous. Although the fact that a piece of equipment fails to comply with published engineering standards may allow a jury to infer that the product is defective, it does not establish, by itself, that the defect made the product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer. See

Bohnstedt v. Robscon Leasing L.L.C., 993 P.2d 135, 136 (Okla. Civ. App. 1999) (setting forth the essential elements of a products liability action under Oklahoma law). Aside from Munsell's testimony, plaintiff introduced no additional evidence to show defective design or unreasonable dangerousness. Thus, we conclude there was an inadequate residuum of evidence that could support a reasonable jury verdict favoring plaintiff's product liability claim.

## IV

The district court's grant of judgment as a matter of law in favor of defendant is **AFFIRMED**.