**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 17, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.                                                                      No. 23-7022

JOSEPH STANLEY HARJO,

    Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:21-CR-00022-RAW-1)**

_____

Sandy D. Baggett, Spokane, Washington, for Defendant-Appellant.

Linda A. Epperley, Assistant United States Attorney (Christopher J. Wilson, United States Attorney, and Anthony C. Marek, Assistant United States Attorney, with her on the brief), United States Attorney's Office, Muskogee, Oklahoma, for Plaintiff-Appellee.

_____

Before **TYMKOVICH**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Joseph Harjo was tried and convicted by a jury in Oklahoma federal court for aggravated sexual abuse in Indian Country under the Major Crimes Act. 18 U.S.C. §§ 1153, 2241. The district court sentenced him to life in prison. Mr. Harjo now challenges his conviction, arguing (1) § 1153 is unconstitutional, and (2) the district

court abused its discretion in admitting certain evidence of prior child abuse at trial under Federal Rule of Evidence 414.

We affirm. Controlling Supreme Court precedent establishes the constitutionality of the Major Crimes Act, which permits the prosecution of sex abuse felonies in Indian Country. And the district court did not abuse its discretion in admitting the testimony of five child witnesses under Rule 414, each of whom testified about their prior experiences of sexual abuse by Mr. Harjo.

## I. Background

In 2016 Mr. Harjo sexually molested his then-six-year-old daughter, J.B., during her overnight visit to his home. [RIII.69-70, 72-75.] Mr. Harjo's home was in Muskogee, Oklahoma. At the time, Oklahoma understood itself as having jurisdiction over Muskogee. Consistent with that understanding, Oklahoma charged Mr. Harjo with child sexual abuse in violation of Okla. Stat. tit. 21, § 843.5(E) later that year. A state jury subsequently convicted him, and on August 23, 2017, the court imposed a life sentence. [RII.46.]

In 2020, *McGirt v. Oklahoma* upended that conviction by holding Muskogee was situated in the Muscogee Creek Nation. 591 U.S. 894 (2020). This meant Oklahoma lacked jurisdiction to prosecute offenses like Mr. Harjo's. Instead, he should have been prosecuted in federal court under the Major Crimes Act. Mr. Harjo's conviction was set aside and in 2021 a federal grand jury indicted him on one count of aggravated sexual abuse in Indian Country. [RI.17-18.]

2

Before trial, the federal government sought to introduce evidence under Federal Rule of Evidence 414 that Mr. Harjo had molested five other children: A.B., R.B., L.L., C.L., and M.P.[1]  Rule 414 provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation."  Each child was to testify live to their abuse allegations, which occurred when they were between four and thirteen years old.[2]  [RI.16–20; *see also* RIII.226–309.]

Before admitting Rule 414 evidence, a court must determine that a reasonable jury could conclude the prior acts occurred by a preponderance of the evidence.  As corroborating documentary evidence, the government identified (1) a Tulsa Police Department report documenting Mr. Harjo's alleged molestation of A.B. and R.B., (2) an Oklahoma Department of Human Services (DHS) report and forensic interview documenting Mr. Harjo's alleged rape of C.L., (3) a DHS report documenting Mr. Harjo's alleged molestation of L.L., and (4) a DHS report and forensic interview documenting Mr. Harjo's alleged molestation of M.P.  [RI.22–23.]

---

[1]  These child witnesses comprise two nieces of Mr. Harjo's ex-girlfriend, A.B. and R.B.; his son L.H. (who later changed his name to L.L.); another daughter—and L.L.'s sister—C.H. (who is later referred to as C.L.); and L.L. and C.L.'s half-sister, M.M. (later referred to as M.P.).  For consistency we use the acronyms used by the witnesses at trial, not those appearing in the earlier trial court documents.

[2]  Several of these witnesses were over 20 when they ultimately testified.  But Rule 414 only requires that children be under the age 14 at the time of the abuse.  Fed. R. Evid. 414(d)(1).

Mr. Harjo moved to exclude the witnesses, advancing various theories aimed at impugning their credibility—including the introduction of an expert who would testify to a "high likelihood" that C.L., L.L., and M.P. fabricated their claims.[3] [R1.183–84.] Beyond outright exclusion, Mr. Harjo asked alternatively that the district court hold an evidentiary hearing to evaluate the witnesses' credibility. The district court reserved ruling on the admissibility issue and agreed to hear further argument at the pretrial conference.

The parties and district court dedicated much of the pretrial conference to the admissibility of these witnesses. As before, Mr. Harjo primarily attacked the witnesses' credibility. *See, e.g.*, RIII.19 ("We have provided some of that information about the real concerns about [L.L.] lying."). The district court acknowledged its hesitation over admitting Rule 414 evidence, twice noting it was "not unsympathetic with your arguments" because "I don't like 414. I think it is – it is obviously simply propensity evidence, which I don't like," [RIII.21], and explaining "[w]e are going to look at it again." [RIII.23.] During the colloquy, the government also admitted that "[n]either the U.S. Attorney's office, nor the FBI has interviewed the 414 witnesses." RIII.33.

---

[3] Mr. Harjo also argued, among other things, that he had been acquitted in a previous state trial on charges stemming from A.B. and R.B.'s allegations, but the basis for his acquittal is unclear, and we do not take a jury's general verdict of not guilty to have "necessarily rejected" any specific facts. *Dowling v. United States*, 493 U.S. 342, 352 (1990). As to L.L., M.P., and C.L., Mr. Harjo argued their testimony could not be credible because each child lived in another home where he did not "have access to them" at the time of the alleged abuse, and they had alleged sexual abuse by another man—their mother's boyfriend—with whom they were living at the time. [Aple. Br. at 33; RI.79.]

After the pretrial conference, Mr. Harjo filed a supplemental brief—again highlighting credibility concerns while emphasizing the government's admission that it had not interviewed the witnesses, and again requesting a pretrial evidentiary hearing to determine their credibility.  [RI.146–54.]  Six days later, on October 27, 2021, the district court denied Mr. Harjo's motion without holding a pretrial evidentiary hearing.  Its order acknowledged, as Mr. Harjo had emphasized, concern that the government had not interviewed the witnesses.  But since they were to testify live, the court decided it would "not require these witnesses to testify twice."  RI.160–61.  *See also* RIII.21–22 (Your argument "was mainly a factual argument, which taking it as true is great fodder for cross examination.")  Rather, it warned the government that if the witnesses testified "and the court then determine that a jury could not reasonably find that the act(s) occurred, it will not hesitate to find a mistrial." RI.160 n.6.

*After* the court's October 27th order and *before* trial, the government did interview each witness.  [RIII.217.]  For two of them—M.P. and C.L.—the government produced reports detailing the interviews, which it turned over to Mr. Harjo.  [*Id.*; *see also* RII.16–20.]  After receiving the reports, Mr. Harjo renewed his motion in limine, which the district court again denied.  [RI.185, 175.]

All five witnesses testified at trial.  Prior to each witnesses' testimony, the court read a jury instruction which Mr. Harjo and the government jointly prepared.  RIII.209.  This instruction read:

> You may consider the following evidence only if you unanimously find it is more likely true than not true.  You decide that by considering all of the evidence and deciding

5

what evidence is more believable. Remember, the defendant is on trial only for the crime charged. You may not convict a person simply because you believe that he may have committed similar acts in the past.

*See, e.g.*, RIII.225.

Following their testimony, Mr. Harjo did not request, nor did the district court find, a mistrial. Aple. Br. 19. [*See also* RIII.] The jury convicted Mr. Harjo [RII.25.] for sexually abusing J.B. and, as in state court, the district court sentenced him to life imprisonment—consistent with the applicable Guidelines range. [RI.345-51; RII.49.]

## II. Discussion

On appeal, Mr. Harjo raises two main arguments: (1) the Major Crimes Act is unconstitutional, and (2) the district court abused its discretion under Rule 414 by allowing the five child witnesses to testify.

### A. Constitutionality of the Major Crimes Act

We begin with Mr. Harjo's challenge to the constitutionality of the Major Crimes Act. The Act provides for exclusive federal jurisdiction over certain offenses committed by Indians within Indian country. 18 U.S.C. § 1153. Mr. Harjo argues the Major Crimes Act is unconstitutional and so "did not confer jurisdiction on the district court." Aplt. Br. at 28.

We review de novo jurisdictional questions and properly raised challenges to the constitutionality of a statute. *See United States v. One Parcel Prop. Located at Lot 85, Cnty. Ridge*, 100 F.3d 740, 742 (10th Cir. 1996); *United States v. Hampshire*, 95 F.3d 999 (10th Cir. 1996).

6

Mr. Harjo believes Congress lacked constitutional authority to enact the Major Crimes Act, and, alternatively, that the Act violates the Equal Protection Clause by discriminating based on "Indian" status without a sufficiently compelling interest to do so. *See* Aplt. Br. at 20–29.

These arguments contradict longstanding Supreme Court doctrine, which have consistently upheld the Major Crimes Act against similar plenary power and equal protection challenges.[4] *See*, *e.g.*, *United States v. Kagama*, 118 U.S. 375 (1886) (plenary-power); *United States v. Antelope*, 430 U.S. 641, 645 (1977) (equal-protection). Under those doctrines, we have rejected challenges to federal laws affecting Indian tribal members and regulating their interactions on tribal lands since Congress exercises plenary power over such matters. *See, e.g.*, *United States v. McGirt*, 71 F.4th 755, 772 (10th Cir. 2023) (recognizing continuing validity of plenary power rationale underlying Supreme Court precedents to reject a constitutional challenge to the Major Crimes Act).

We have also rejected arguments contending that the differing treatment of Indians and non-Indians amounts to an impermissible classification based on race.

---

[4] The Supreme Court consistently upholds the constitutionality of federal laws impacting tribes and tribal members, describing Congress's authority as plenary, or absolute. *See, e.g.*, *Haaland v. Brackeen*, 599 U.S. 255, 275–76 (2023) (reiterating that Congress's authority to legislate with respect to Indians is "well established and broad" and "plenary within its sphere"); *United States v. Lara*, 541 U.S. 193, 200 (2004) ("[T]he Constitution grants Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as 'plenary and exclusive.'") (citations omitted).

7

*See, e.g.*, *United States v. Jim*, 786 F.3d 802, 805 n.2 (10th Cir. 2015) (citing

*Antelope*, 430 U.S. at 645–47); *United States v. Shavanaux*, 647 F.3d 993, 1001–02

(10th Cir. 2011) (*quoting Antelope*, 430 U.S. at 646).

In sum, Mr. Harjo's plenary power and Equal Protection Clause arguments are

contrary to binding Supreme Court precedent.  These cases hold that Congress's

authority over Indian affairs is plenary and "federal regulation of Indian affairs is not

based upon impermissible classifications" but is based on "the unique status of

Indians as a separate people with their own political institutions."  *Antelope*, 430 U.S.

at 646.[5]

Mr. Harjo cites Justice Gorsuch's concurrence in *Haaland v. Brackeen* as

"call[ing] into question" the notion that Congress's authority could reach conduct limited

to Indians on tribal land.  *See* 599 U.S. 255, 308 (2023) (characterizing the Indian

Commerce Clause as granting Congress a "robust (but not plenary) power to regulate the

ways in which *non-Indians may interact with Indians*") (emphasis added).  But

Mr. Harjo's reading of this language—as implying that Congress's power does not

extend to regulating interactions between or among Indians—has no bearing here.  This

concurrence does not invalidate by implication our precedents holding the Major Crimes

---

[5] The Supreme Court continues to cite these cases favorably, recognizing the continued validity of the underlying principle.  *See, e.g.*, *Haaland*, 599 U.S. at 275 (citing *Antelope*, 430 U.S. at 648); *Rice v. Cayetano*, 528 U.S. 495, 519 (2000) ("Congress may fulfill its treaty obligations and its responsibilities to the Indian tribes by enacting legislation dedicated to their circumstances and needs.") (citing *Antelope*, 430 U.S. at 645–47).

Act constitutional, particularly when the majority in *Haaland* reaffirmed that the Court "ha[s] not doubted Congress's ability to legislate across a wide range of areas [concerning Indian tribes], including criminal law." *Id.* at 275.

Mr. Harjo's gesture to *Haaland* is unavailing given the body of existing precedent holding the Major Crimes Act constitutional.

### B. Admission of Rule 414 Evidence

We next consider Mr. Harjo's challenge to the district court's admission of the Rule 414 witnesses. He primarily contends the district court erred by failing to satisfy its threshold obligations to adequately scrutinize the proffered witnesses' allegations before permitting them to testify. We disagree.

### 1. Standard of Review

The first step in analyzing Mr. Harjo's argument is determining the appropriate standard of review. He argues for de novo review, citing *United States v. McVeigh* for the proposition that this court reviews de novo when the district court "fails to perform [its] gatekeeping or preliminary function under Rule 403."[6] Aplt. Br. at 28 (citing 153 F.3d 1166, 1189 (10th Cir. 1998)).

Mr. Harjo's argument misunderstands the law. The cited portion of *McVeigh* concerns the appropriate response by an appellate court when the district court "failed to

---

[6] Fed. R. Evid. 403 is discussed below in detail. But for context, it imposes on courts a balancing test under which they must determine whether the "probative value" of "relevant evidence" is "substantially outweighed" by its risk of unfair prejudice.

9

make an explicit finding to support its Rule 403 ruling." *See id.* In that situation—

*McVeigh* explains—if the record is sufficiently detailed, the appellate court may perform

a de novo balancing of the Rule 403 factors and, if appropriate, affirm without

remanding.

The situation *McVeigh* contemplates is not presented here. The district court made

explicit findings, so we face no uncertainty about how the district court understood the

evidence and balanced the relevant factors. Under these circumstances, we do not

perform a de novo analysis. *Cf. id.* (concluding de novo review was appropriate only

because "the district court failed to make an explicit record of its balancing of the

Rule 403 factors" and the record was adequate to "shed[] considerable light on how the

district court viewed the evidence.").

There is no call in our caselaw to duplicate the efforts of a district court when it

performed the requisite balancing and adequately articulated its findings. *Cf. id.* Because

the district court here made the requisite findings, we review its decision for abuse of

discretion, which Mr. Harjo acknowledges is the typical standard of review for

evidentiary rulings. *See* Aplt. Br. at 28 (citing *United States v. Sturm*, 673 F.3d 1274,

1285 (10th Cir. 2012)).

Still, Mr. Harjo urges us to vary from our typical standard based on his stated

understanding of the district court's function under Rule 414 as that of a "gatekeep[er]."

Aplt. Br. at 28. This mischaracterization appears to import language from the unrelated

Rule 702, which governs admission of scientific or specialized expert testimony. *See*,

*e.g.*, *United States v. Pehrson*, 65 F.4th 526, 541 (10th Cir. 2023) (reviewing a district

10

court's Rule 702 analysis and noting that "though the district court has discretion in how to perform the gatekeeping function," in that context, "we review de novo the question of whether the district court applied the proper standard and actually performed its gatekeeper role in the first instance").

Neither this "gatekeeping" language nor any instruction to review the district court's performance of that function de novo appears in our decisions on Rule 414. *See, e.g.*, *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007) (reviewing admission of evidence related to defendant's propensity for sexual abuse under Rule 414 for abuse of discretion). And we decline to create that rule here. The basis for Rule 702 is that experts, by virtue of being experts, testify on topics beyond the understanding of typical lay jurors. *Pehrson*, 65 F.4th at 540 (Rule 702 governs expert testimony, involving matters "*beyond* the realm of common experience") (emphasis added). Given their specialized knowledge, experts pose a particular threat of improperly intruding into the jury's fact-finding role. Mr. Harjo is familiar with this justification—the district court properly excluded his proffered expert for that very reason.[7] RI.183 (Expert's opinion

---

[7] Mr. Harjo's expert would also have testified that C.L., M.P., R.B., and A.B.'s interviews were not performed "according to accepted forensic methodology." RI.183. The court determined the expert "is not qualified to testify on such matters" since he had "no demonstrable training, expertise, education, or experience in forensic interviews, false memories, or juvenile suggestibility." *Id.* at 184. Rather, his credentials indicated he specialized in the evaluation and treatment of sex offenders. *Id.* We see no error in that determination. *See e.g.*, *Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1088 (10th Cir. 2001) (holding it was not an abuse of discretion to exclude an expert's testimony evaluating a paver if he had never previously evaluated a paver).

that C.L., L.H., and M.P. fabricated claims of abuse "would clearly invade the province of the jury" since "[e]xperts may not opine on another witness's credibility."). *See also United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (expert testimony is improper when it "encroaches upon the jury's vital and exclusive function to make credibility determinations").

We decline to graft Rule 702's "gatekeeping" analysis onto the Rule 414 inquiry, which would sidestep Congress's legislative mandate that such evidence "normally" be admitted. *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) ("[T]he exclusion of relevant evidence under Rule 403 should be used infrequently."). *See also United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997) (courts should "*liberally* admit evidence of prior uncharged sex offenses" in sexual assault and child molestation cases) (emphasis added).

At bottom, district courts have "broad" authority over the admission of evidence "and its decision to admit such evidence will not be reversed by this court absent an abuse of discretion." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 479 (10th Cir. 1990). *See also United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020) (we take "a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former.").

We thus review the district court's admission of the Rule 414 witnesses for abuse of discretion. *United States v. Mann*, 193 F.3d 1172, 1173 (10th Cir. 1999) ("We review the admission of Rule 414 evidence for an abuse of discretion.").

12

### 2. *Rules 414 & 403*

"Evidence law generally abhors the propensity inference—the notion that a person did something just because he has a corresponding character or has done similar things before." *United States v. Piette*, 45 F.4th 1142, 1157 (10th Cir. 2022). But Federal Rule of Evidence 414 is an exception to that general rule—embracing the propensity inference in cases involving child molestation.[8]

---

[8] In full, Rule 414, titled "Similar Crimes in Child-Molestation Cases," provides:

(a) Permitted Uses. In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

(b) Disclosure to the Defendant. If the prosecutor intends to offer this evidence, the prosecutor must disclose it to the defendant, including the witnesses' statements or a summary of the expected testimony. The prosecutor must do so at least 15 days before trial or at a later time that the court allows for good cause.

(c) Effect on Other Rules. This rule does not limit the admission or consideration of evidence under any other rule.

(d) Definition of "Child" and "Child Molestation." In this rule and Rule 415:

(1) "child" means a person below the age of 14; and

(2) "child molestation" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving:

(A) any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;

(B) any conduct prohibited by 18 U.S.C. chapter 110;

(C) contact between any part of the defendant's body—or any object—and a child's genitals or anus;

Rule 414 is a Congressional mandate. When Congress considered and adopted it in 1994, it justified the rule by highlighting that a jury's determination of culpability often turns on credibility assessments about the sexual nature of the alleged touching. For similar reasons, Rule 413 permits the same evidence in sexual assault cases. *See* 140 Cong. Rec. H8968-01, 140 Cong. Rec. H8968-01, H8991, 1994 WL 461399 (testimony before the House that both sexual assault and child molestation cases "often turn on difficult credibility determinations").[9]

This makes sense because sexual assault and molestation rarely occur in the presence of other witnesses and a child victim's credibility "can readily be attacked in the absence of substantial corroboration." *Id.* Congress therefore determined it would be appropriate to permit the jury to consider a defendant's past conduct as corroborating evidence. *See* PL 103–322, September 13, 1994, 108 Stat 1796; *see also Enjady*, 134 F.3d at 1432 ("Since neither stranger nor acquaintance rapes generally occur in the presence of credible witnesses, [Rule 413] permits other victims to corroborate the

---

> (D) contact between the defendant's genitals or anus and any part of a child's body;
>
> (E) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or
>
> (F) an attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E).

[9] Rule 413 and 414 serve similar purposes and involve similar analyses. *See Enjady*, 134 F.3d at 1432 (setting forth a balancing test in the Rule 413 context that also applies in the Rule 414 context).

14

complainant's account via testimony about the defendant's prior sexually assaultive behavior.") (quoting Mark A. Sheft, *Federal Rule of Evidence 413: A Dangerous New Frontier*, 33 AM. CRIM. L. REV. 57, 79 (1995)).  Nevertheless, both rules are controversial since they deviate from the general rule *against* propensity evidence.

Although Rules 413 and 414 establish exceptions to the general rule against propensity evidence, they do not authorize its indiscriminate admission.  Rather, the evidence still must pass constitutionally mandated due process requirements.  A district court must determine first whether the proffered evidence is relevant under Rule 414, and second, whether its probative value is *substantially* outweighed by its risk of *unfair* prejudice under Rule 403.  *See Benally*, 500 F.3d at 1090.

At the first step, evidence of a prior child molestation may qualify for admission if: "(1) the defendant is accused of a crime involving sexual assault or child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant." *Id.*  If those threshold requirements are satisfied, the district court proceeds with its analysis under Rule 403.

When applying Rule 403 to Rule 414 evidence, the district court must first "make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *Id.*  The court then proceeds with a specialized version of the standard Rule 403 balancing analysis, which assesses whether the proffered evidence's "probative value is substantially outweighed by the danger of unfair prejudice." *Id.*  In this specialized analysis, the court must consider the *probative value*

15

of the proffered evidence using the *Enjady* factors: "1) how clearly the prior act has been

proved; 2) how probative the evidence is of the material fact it is admitted to prove;

3) how seriously disputed the material fact is; and 4) whether the government can avail

itself of any less prejudicial evidence." *Enjady*, 134 F.3d at 1433.

The court must then weigh those four factors against three other factors meant to

capture the *prejudicial danger*: "1) how likely is it such evidence will contribute to an

improperly-based jury verdict; 2) the extent to which such evidence will distract the jury

from the central issues of the trial; and 3) how time consuming it will be to prove the

prior conduct." *Id.*

Our cases say that "exclusion of relevant [Rule 414] evidence under Rule 403

should be used infrequently," *id.*, and this evidence should be admitted "liberally."

*Meacham*, 115 F.3d at 1492.

### 3. The District Court's Rule 414 & 403 Analysis

Before introducing evidence under Rule 414, the government must provide notice

of its "inten[t] to offer this evidence . . . at least 15 days before trial." Fed. R.

Evid. 414(b). Here the government properly provided notice and—after multiple rounds

of briefing, a hearing, a motion for reconsideration, and a renewed motion in limine—the

district court admitted the five child witnesses. As we explain below, this was not an

abuse of the district court's discretion.

#### a. Rule 414 – Threshold Relevance

The district court began by concluding the Rule 414 witnesses' testimony

qualified for admission because (1) Mr. Harjo was accused of child molestation, (2) the

16

proffered testimony was "evidence of [his] commission of other offenses involving child molestation," and (3) the evidence was relevant to his culpability for the accused crime. [RI.158.] *Benally*, 500 F.3d at 1090. Mr. Harjo does not dispute the threshold Rule 414 relevance of the witnesses' allegations, and we discern no error in the analysis.

### b. *Rule 403 – Preponderance of the Evidence Requirement*

The next step is determining whether a jury could reasonably find that the "other act occurred by a preponderance of the evidence." *Id.* The district court concluded it could. The crux of Mr. Harjo's argument is that the district court could not have made that determination based on the government's pre-trial proffer. For the reasons explained below, we disagree.

The government provided Mr. Harjo and the district court notice of its intent to produce the witnesses on July 26, 2021. Consistent with Rule 414(b)'s disclosure requirement, the government's notice summarized each witness's "expected testimony" by reference to contemporaneous, corroborating police reports, DHS reports, and forensic interviews.

Mr. Harjo moved to exclude the witnesses, arguing they were not credible. He offered—and continues to offer—a plethora of arguments supporting his position, including: (1) that he was acquitted of A.B.'s allegations, (2) that his alleged rubbing of R.B.'s breasts under her shirt could not constitute child molestation,[10] (3) that he

---

[10] It does. Rule 414(d)(2)(A) defines "child molestation" as, among other things, "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child[.]" Chapter 109A defines "sexual contact" as the "intentional touching, either

17

could not have raped C.L. at gunpoint in the woods since he "never held a gun" and his own investigations revealed "there are no 'woods' anywhere near" her house, [R1.98.] (4) that "L.H. is not a credible witness" because he "uses claims of abuse to get his way" [*id.*], and (5) that M.P.'s rape allegations "seem[] to have been prompted out of a need to be like her sister," C.L.  R1.98.

The district court took these arguments seriously.  Over a span of three months, it entertained multiple rounds of briefing, a hearing, and a renewed motion addressing the witnesses' admissibility.  Throughout, the district court explained it was "not unsympathetic [to Mr. Harjo's] arguments" because "I don't like 414." RIII.21, 23.  Indeed, it opined that making Rule 414 admissibility determinations is perhaps the "hardest part of [the] job."  RIII.24.

Nevertheless, after "consider[ing] the briefing and the argument from the parties at the pretrial conference," the district court determined "a jury could reasonably find by a preponderance of the evidence that the acts occurred."  RI.158–59.  Critical to this determination was that the witnesses would be testifying live at trial.  RIII.22 (characterizing Mr. Harjo's arguments as "mainly factual" concerning the witnesses' credibility which is "great fodder for cross examination").  The district court, moreover, admonished the government that it would readily find a mistrial if it deemed the witness testimony non-credible.

---

directly or through the clothing, of" the "breast" of "any person with an intent to . . . arouse or gratify the sexual desire of any person[.]"  18 U.S.C. § 2246(3).

That decision was not an abuse of discretion. Mr. Harjo's arguments go to the witnesses' credibility, meaning he wanted the district court to find the witnesses inherently *in*credible. "[T]he doctrine of inherent incredibility is a longshot." *United States v. Cardinas Garcia*, 596 F.3d 788, 795 (10th Cir. 2010). And we will not hold testimony legally "incredible" unless it is "unbelievable on its face." *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1134 (10th Cir. 2003). The "inherent incredibility" standard is an appropriately high bar because determining witness credibility is a role for the jury. *See, e.g.*, *Garcia-Martinez v. City & Cnty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) (when key factual issues "turn on the credibility and demeanor of the witness, we prefer the finder of fact to observe live testimony of the witness") (internal quotations omitted).

Mr. Harjo does not meet that standard. Provided with (1) the substance of the witnesses' allegations, (2) contemporaneous corroborating documentary evidence, and (3) the witnesses' commitment to give sworn live testimony, the district court did not abuse its discretion by concluding a reasonable jury could find the prior acts occurred by a preponderance of the evidence.[11] *Cf.* Fed. R. Evid. 414(b) (witness disclosure only requires "a summary of the expected testimony.").

---

[11] We do not decide today whether a witness's trial testimony *alone* can satisfy *Enjady*'s threshold preponderance inquiry. Instead, we affirm in this case because, when the government simultaneously offers pre-trial materials supporting such testimony, and the district court considers those materials in making its admissibility determination under Rule 414, we will not displace the jury's role in assessing credibility.

19

The holdings of other circuits support this conclusion.  In *United States v. Hruby*, for example, the defendant confessed to molesting his friend's daughter. 19 F.4th 963, 966 (6th Cir. 2021).  The district court admitted that evidence under Rule 414 in a subsequent child molestation case.  *Id.*  On appeal, Hruby argued the district court erred by concluding a jury could reasonably find he committed the prior molestation—based solely on his admission—by a preponderance of the evidence. *Id.* at 966–67.  The Sixth Circuit rejected this argument, observing that "the testimony of the witnesses need not be explicitly corroborated" and "grafting a corroboration requirement onto Rule 414(a) would run counter to the flexible nature of Rule 104(b)."[12]  *Id.* at 967–68.  "Relevance—not corroboration—is the only criterion for admissibility."  *Id.* at 968.

The Fifth and Ninth circuits agree.  In *United States v. Abundiz*¸ the Fifth Circuit explained:

> The district court appropriately found that [a victim's] alleged assaults need only be relevant to be admissible under FRE 413; Abundiz did not need to be formally charged or convicted for the conduct to be admissible.  The court found the evidence regarding a defendant's "history of allegations of sexual assault" probative "in a trial for aggravated sexual abuse" and not "substantially outweighed by the concerns in Rule 403."

---

[12]  Federal Rule of Evidence 104(b) governs the competency of a witness to testify.  *See* Fed. R. Evid. 104(c) advisory committee notes to 1972 proposed rules ("Not infrequently the same evidence which is relevant to the issue of establishment of fulfillment of a condition precedent to admissibility is also relevant to weight or credibility, and time is saved by taking foundation proof in the presence of the jury.").

93 F.4th 825, 835–36 (5th Cir. 2024).  *See also United States v. Norris*, 428 F.3d 907, 913 (9th Cir. 2005) ("Under Rule 414(a), the key to admissibility is relevance.").

Like those circuits, we agree that the key to admission is *relevance*, not corroboration.[13]  Mr. Harjo does not dispute that the witnesses' allegations were relevant to his pending charge.  And here, the government even offered corroborating, documentary evidence supporting the witnesses' forthcoming live testimony.  While Mr. Harjo attacks the reliability of the allegations reflected in those documents, that is a red herring since its proffer only corroborated and "summar[ized] . . . the expected testimony."  Fed. R. Evid. 414(b).  *See, e.g.*, *Meacham*, 115 F.3d at 1492; *Enjady*, 134 F.3d at 1433.  Simply put, Mr. Harjo cannot make *credibility* a threshold *admissibility* problem because admissibility is tethered to relevance, while witness credibility is a jury question.[14]  *See also* Fed. R. Evid. 414(a) ("The evidence may be considered on any matter *to which it is relevant*.") (emphasis added).

---

[13] That said, we do not question *Enjady*'s threshold inquiry regarding preponderance.

[14] Further, *Enjady* factor 1 requires the court to consider "*how clearly* the prior act has been proved."  134 F.3d at 1433 (emphasis added).  This means the prior acts need not be *clearly* proved—they only need to cross the preponderance of the evidence threshold—meaning (roughly) that it was more likely than not that they took place.

Here, the witnesses agreed to testify live to the contents of the documentary evidence—meaning they were offering sworn testimony to its veracity.  The willingness to testify to the documentary evidence supports the district court's conclusion that a jury could find the prior acts occurred by a preponderance of the evidence.

Mr. Harjo next faults the district court for not holding a pretrial evidentiary hearing to assess the witnesses' credibility.  He argues an evidentiary hearing is the "preferred" process for evaluating evidence under Rule 414 and suggests doing so might even be "necessary" when formal charges never resulted from the allegations. *See* Aple. Br. at 30-31 (citing *Benally*, 500 F.3d at 1088; *United States v. Ogden*, No. 20-CR-136-JFH, 2021 WL 789861, at *4 (E.D. Okla. Mar. 1, 2021) (citing *Bennally* for the proposition that "an evidentiary hearing is preferred" when a district court conducts a Rule 403 analysis for testimony about uncharged acts)); *cf. Abundiz*, 93 F.4th at 835–36 ("Abundiz did not need to be formally charged or convicted for the conduct to be admissible" under the analogous Rule 413).  At oral argument, Mr. Harjo elaborated on this argument, urging us to adopt a per se rule that would require district courts to hold evidentiary hearings under Rule 414 when the witness purports to offer testimony about conduct for which the defendant was not convicted. *See* Oral Arg. 6:20-7:29, 8:30-8:38.

Tackling these positions in reverse order, we first decline Mr. Harjo's invitation to create a per se rule.  As Mr. Harjo has acknowledged, nothing in our caselaw requires the district court to hold an evidentiary hearing under Rule 414.  *Id.* at 7:29–7:50.  Whether to hold such a hearing is an inherently discretionary determination, ill-suited for a categorical rule.  We leave to district courts the particularities of pretrial resource allocation.

Nor can we say the district court abused its discretion by not holding a hearing here.  As explained, the fact that the witnesses would testify live to their prior

allegations—which were corroborated by contemporaneous documentary evidence "summar[izing] the expected testimony"—was enough for the district court to conclude a jury could find by a preponderance of the evidence that the prior acts had occurred. Fed. R. Evid. 414(b). Indeed, the district court even warned the government "that should it introduce any one of these witnesses and the court then determine that a jury could not reasonably find that the act(s) occurred, it will not hesitate to find a mistrial." RI.160.

Despite that admonishment, Mr. Harjo did not move for a mistrial, nor did the district court sua sponte grant one. Mr. Harjo does not allege its failure to do so was error. *See United States v. Crawford*, 707 F.2d 447, 450, 450–51 (10th Cir. 1983) (assuming error and concluding that failure to move for a mistrial undermines contention on appeal that error deprived defendant of a fair trial). Presumably, this is because—after hearing the testimony—a reasonable jury *could* have found that the prior acts occurred by a preponderance of the evidence. *See infra.* n.15 (quoting the following limiting instruction read before each witnesses testified: "[y]ou may consider the following evidence only if you unanimously find it is more likely true than not true."). Any supposed error that the district court made by allowing the testimony was rendered harmless once the witnesses testified, and it became clear that their testimony was relevant and satisfied Rule 403. *See United States v. Mann*, No. CR 94-732 LH, 1998 WL 36029803, at *2 (D.N.M. Dec. 23, 1998), *aff'd*, *Mann*,

23

193 F.3d 1172 (emphasis added).[15]  So, Mr. Harjo functionally asks that we conduct a retrospective analysis of the witnesses' admissibility frozen in time *before* trial. Since the government's earlier proffer was "substantiated by" the witnesses' "subsequent testimony" we decline to do so.  *Id.*

Mr. Harjo's concerns about the Rule 414 witnesses' credibility were legitimate.  Another judge might have struck a different balance in similar circumstances.  But the district court reasonably determined these issues were best addressed through cross-examination, not by mandating a pretrial evidentiary hearing.  Based on the evidence before it—and considering our mandate to "liberally" admit such evidence—we cannot say the district court abused its discretion by permitting the witnesses to testify.

### c.  *Rule 403 – Balancing Test*

We next turn to the district court's Rule 403 balancing analysis under the *Enjady* factors.  *See supra* (B)(2).  Out of the gate, we observe that trial courts have

---

[15]  While this cite is to an unpublished district court case, *United States v. Mann* is helpful because of its procedural history.  In that case, we remanded on direct appeal for the trial court to provide a reasoned elaboration of its Rule 414 and Rule 403 admissibility decisions.  145 F.3d 1347 (10th Cir. 1998).  The defendant argued the government's proffer could not meet the required preponderance of the evidence standard based on various inconsistencies and credibility issues with the Rule 414 witness.  The district court disagreed, concluding that the prosecution's proffer was "substantiated by [the alleged victim's] subsequent testimony" at trial. *Mann*, 1998 WL 36029803, at *2 (emphasis added).  We affirmed.  *United States v. Mann*, 193 F.3d 1172, 1174 (10th Cir. 1999) (witness's "testimony on direct examination" permitted "preliminary finding that a jury could reasonably find by a preponderance of the evidence that the [prior similar sexual act] occurred" even though "her initial statements about defendant's prior acts were inconsistent.").

"considerable discretion in performing the Rule 403 balancing test" and "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (internal quotation marks omitted).

To be excluded under Rule 403, the evidence's probative value must be *substantially* outweighed by a danger of *unfair* prejudice. Fed. R. Evid. 403. "Unfair prejudice" in this context means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Silva*, 889 F.3d at 712. "As to a criminal defendant, it speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* Evidence offered under Rule 414 is not *unfairly* prejudicial "simply because it is offered to show a propensity to commit" child molestation. *United States v. Perrault*, 995 F.3d 748, 765 (10th Cir. 2021) (quoting Charles Alan Wright & Arthur R. Miller 23 Fed. Prac. & Proc. Evid. § 5387 (2d ed.)). *See also Libbey-Tipton*, 948 F.3d at 704 (defendant presented "no argument as to why the evidence in question would unfairly prejudice him, other than the stigma associated with child molestation.").

Mr. Harjo directs his arguments at Rule 403's concern over "needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see* Aplt. Br. at 38. ("[W]hen a defendant challenges Rule 414 testimony as cumulative, the district court should consider the diminishing marginal return on each additional witness's testimony.") (citing *Perrault*, 995 F.3d at 769)). But Mr. Harjo forfeited this argument because

25

his general objections at trial did not suffice to preserve a specific challenge to the testimony as cumulative—a fact-specific determination made "in view of the testimony already permitted." *Perrault*, 995 F.3d at 769.

To preserve an error in admitting evidence, a party must timely object or move to strike, stating the specific ground of the objection. Fed. R. Evid. 103(a)(1)(B). Mr. Harjo did not do so. While he made general objections to the Rule 414 testimony, he did not specifically argue that the evidence had become cumulative. *See, e.g.*, RIII.225:3–6 (government calling L.H.); RIII.225:7–8 ("Your Honor, the defense objects to this witness"); RIII.225:12–13 ("Your Honor, I have no further cross"). Even if Mr. Harjo had moved in limine pretrial on these grounds, he was "required to renew the objection" during trial. *United States v. Mejia-Alarcon*, 995 F.2d 982, 988 n.3 (10th Cir. 1993).

"Absent a specific objection, the district court is deprived of the opportunity to correct its action in the first instance." *United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009). Consequently, Mr. Harjo failed to preserve his cumulative evidence argument. *See, e.g.*, *United States v. Redbird*, 73 F.4th 789, 793–94 (10th Cir.), *cert. denied,* 144 S. Ct. 404 (2023) (general evidentiary objection failed to preserve a specific issue since the character evidence had a dual purpose); *United States v. Merritt*, 961 F.3d 1105, 1116 n.4 (10th Cir. 2020) (treating argument as waived when the defendant failed to raise a specific evidentiary objection at trial and did not demonstrate plain error on appeal).

Even if that were not so, his argument still fails on the merits. While our precedent suggests that "more than four" Rule 414 witnesses *may* require trial judges to ensure that each witness's testimony "remains corroborative," *Perrault*, 995 F.3d at 769, it does not follow that five such witnesses automatically pose a cumulativeness problem. The district court considered each witness and concluded "there is need" for their evidence since Mr. Harjo "ardently contests J.B.'s allegations in this case." RI.159.

And even putting that aside, we would still conclude that any error in admitting the witnesses was harmless because "district courts can mitigate any potential jury bias from Rule 414 witnesses by giving limiting instructions." *Perrault*, 995 F.3d at 770 (citing *Benally*, 500 F.3d at 1093). The district court instructed the jury *before* each witness testified that their testimony could not serve as the basis for convicting Mr. Harjo.[16] [RIII.225.] We generally assume "juries

_____

[16] Recall that the instruction read:

> You may consider the following evidence only if you
> unanimously find it is more likely true than not true. You
> decide that by considering all of the evidence and deciding
> what evidence is more believable. Remember, the
> defendant is on trial only for the crime charged. You may
> not convict a person simply because you believe that he
> may have committed similar acts in the past.

RIII.225. And the court's closing instruction read:

> You are the sole judges of the credibility, or believability,
> of each witness and the weight to be given the witness's
> testimony. . . . Remember the defendant is on trial only for
> the crime charged. You may not convict a person simply

follow the instructions they receive," *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998), and Mr. Harjo has not argued that the instructions were inadequate. *See Perrault*, 995 F.3d at 770 (concluding that any error in admitting Rule 414 witnesses was cured by jury instructions). Indeed, his counsel "agreed on the language" of that instruction. RIII.209–210. So even if the district court erred by admitting the witnesses (and we conclude it didn't), that error was harmless considering its limiting instructions.

Beyond cumulativeness, the district court carefully and correctly performed the requisite balancing under the *Enjady* factors and stated its reasoning as to each factor. *See, e.g.*, RI.158–60; RIII.160–61 ("The Government has assured the court that it will not put on mini-trials, but will simply call these children to testify, and that the evidence will not distract the jury from the central issues of the trial."). Mr. Harjo may disagree with the outcome of this balancing, but in making these findings, the district court fulfilled its obligation "to fully evaluate the proffered . . . evidence and make a clear record of the reasoning behind its findings." *Benally*, 500 F.3d at 1091. Nothing suggests the district court abused its discretion by determining the probative value of the witnesses' testimony was *substantially* outweighed by a risk of *unfair* prejudice. *See Libbey-Tipton*, 948 F.3d at 704

---

because you believe that he may have committed similar
acts in the past.

RIII.326–29.

("[E]vidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403.") (cleaned up).

In sum, the district court carefully addressed the *Enjady* factors and reached a permissible conclusion on the admissibility of the testimony.

## III.  Conclusion

Because binding precedent prescribes the Major Crimes Act's constitutionality, and because the district court did not abuse its discretion by admitting the Rule 414 witnesses, we affirm.